## FORD *et al. v.* GILL *et al.*

The trial court correctly construed the will involved in the present case, and consequently committed no error in granting a nonsuit.

Argued December 18, 1899.— Decided January 30, 1900.

Ejectment. Before Judge Lumpkin. Fulton superior court. March term, 1899.

Plaintiffs were nonsuited in the court below, and excepted. The only evidence necessary to be set out here is a copy of the will of William Terrell, dated February 19, 1851, which is as follows:

"Georgia, DeKalb County. In the name of God, amen. I, William Terrell, of State and county aforesaid, being impressed with the certainty of death, but of sound and disposing mind and memory, do make this my last will and testament. In the first place I desire that my body be decently buried, and my soul I commit to Almighty God who gave it. With regard to my estate, both real and personal, I make the following disposition:

1st. I give and bequeath to Sileta Henson, wife of James Henson, of the State of Alabama, three negroes, to wit: Fanny, a woman about thirty-three years of age, and her child, a girl by the name of Frances, about three years of age, and Rhoda, a girl about eighteen years of age, which said negroes I give for the sole and separate use of the said Sileta Henson for and during her natural life, free from the control or management of her husband, and at her death to be equally divided between her children.

2nd. I give and bequeath to Mary Ford, wife of my grandson William Ford, a negro man by the name of Tom, about thirty-seven years of age, a negro woman by the name of Kate, about forty-one years of age, and her child, a girl about six years of age, by the name of Tabitha Camele, to be held and enjoyed by the said Mary Ford to her sole and separate use, and free from the control of her husband, for and during the time of her natural life, and at her death to be equally divided amongst her children.

3rd. I give and bequeath unto my grandson Coleman Ford a negro man by the name of George, about thirty-five years of age, and a negro man by the name of Dud, about thirty-three years of age. Also I give and bequeath to him all that part of lot of land number one hundred and forty-four in the fifteenth district of originally Henry, now DeKalb County, Georgia, which lies on the East side of Thurman's ginhouse branch, supposed to be one hundred acres.

4th. I give and bequeath to my friend William Ezzard of the State and County aforesaid, to be held in trust by him for the use and benefit and behoof of my great-grandson William Terrell, alias William Terrell Ford, and to be held by the said trustee and managed for the use and benefit of the said William Terrell Ford, three negro men, to wit, Jack, Ben, and Jim, and all that part of lot of land number one hundred and forty-four which lies on the west side of Thurman's ginhouse branch, supposed to contain one hundred acres, and fifty acres of lot number nine in the fourteenth district of originally Henry, now DeKalb County, adjoining thereto, and upon the death of said Ezzard or his resignation of the said trust, I desire that

some other prudent and trustworthy person be appointed by the judge of the superior court of said county to take charge of and manage said property for the use and benefit of said William Terrell Ford during his natural life.

5th. My will and desire is that, as soon after my death as convenient, all the balance of my property not hereinbefore disposed of be sold by my executor hereinafter appointed, and, after paying all my just debts, I desire the proceeds to be equally divided between the said Sileta Henson, Mary Ford, Coleman Ford, Wm. Ezzard as trustee as aforesaid for William Terrell Ford, to be held and enjoyed by the said Sileta and Mary and their children respectively in the same manner and upon the same conditions as they are to hold and enjoy the negroes hereinbefore bequeathed to them, and the said Wm. Ezzard is to hold the said money as trustee and for the use and purposes as hereinbefore specified, to wit, for the use of the said William Terrell Ford."

6th. Appoints Coleman Ford as executor.

*Oscar Reese, J. M. McBride, E. M. & G. F. Mitchell, P. F. Smith,* and *Anderson, Felder & Davis,* for plaintiffs.
*C. W. Smith* and *W. M. Everett,* for defendants.

FISH, J. There was no error in granting the nonsuit. In disposing of the case, our learned brother who presided in the court below delivered an able and lucid opinion, which so completely expresses the views which we entertain of the questions involved, and so clearly demonstrates the correctness of the judgment which he rendered, that we have taken the liberty of adopting it as our own. His honor said:

"On the fifth day of June, 1897, Hester Ford and others brought their suit against W. C. Gill and others, in ejectment, using what is known as the John Doe and Richard Roe form of suit. They attached to their declaration an abstract of title under which they claim to recover. Briefly stated, their claim to recover is this: That the land was owned by one William Terrell, and that he died seized and possessed of it; that he left a will which was duly probated on July 7th, 1851; that the plaintiffs are the heirs at law and legatees of William Terrell.

They claim to be the descendants of four grandchildren of William Terrell, to wit, Sileta Ford who became Sileta Henson, William Ford, Mary Ford, and Coleman Ford. At the close of the plaintiffs' evidence, the defendants moved for a nonsuit. There are several grounds in the motion, but the only one which I deem it necessary to discuss at any length is with reference to the construction of the will of William Terrell, deceased. The land in controversy is that covered by the fourth item, in which a devise in trust is made for William Terrell junior, who is frequently termed in the evidence 'Little Billy.' It is conceded by the plaintiffs that William Terrell junior died in 1897, leaving children, and also that there had been a conveyance by his trustee; so that if the devise in the fourth item was one in fee simple, the plaintiffs have no case. Their entire case depends upon the proposition that the devise in the fourth item of the will of William Terrell senior only creates a life-estate in William Terrell junior. If this construction is correct, then there are two possible grounds on which the plaintiffs' claim of recovery may rest: (1) that this would leave an intestacy as to an estate in reversion in the land, and pass by inheritance to his descendants through his grandchildren other than the mother of William Terrell junior, whom the present plaintiffs claim to be; (2) that this reversion might be covered by the fifth, or residuary clause of the will, and that under that such descendants might recover.

Turning now to the will with a view of construing the devise in question, I would first remark that the well-recognized rule is that the intention of the testator governs. Looking at the will, it seems quite evident that the testator intended to provide for the disposition of his entire estate, and did not intend to leave any intestacy as to any part of it. This may be gathered from the whole will. In the beginning of the will he uses this language: 'With regard to my estate, both real and personal, I make the following disposition.' Evidently he meant his whole estate, and not part of it, and he thought he was making disposition of his entire estate. Again, after he had made certain devises or bequests, including that contained in the fourth item, he provided in the fifth item that, 'as soon after

my death as convenient, all the balance of my property be sold
by my executor,' etc.　Thus it is clear that he did not intend
to leave an intestacy as to some balance, because, after provid-
ing certain specific bequests, he then provided for all the bal-
ance of his estate, and not a portion of the balance.　I think,
therefore, it is evident from the language of the will itself, as
well as from the general tendency of the law in the construc-
tion of wills, that the testator intended to dispose of his entire
estate, and to leave no intestacy as to any portion of it.　In the
next place I may remark that there is no universal scheme of
life-estates in this will which would indicate that the testator
intended to leave a life-estate for this great-grandson.　On the
contrary the general trend of the will is to vest the fee simple
when it reached his great-grandchildren.　By the first item,
the testator bequeathed to Sileta Henson (his grandchild) certain
property for the sole and separate use of said Sileta for and
during her natural life, free from the control or management
of her husband, and at her death to be equally divided among
her children.　This vests absolutely an estate in the great-grand-
children of the testator.　By the second item he gave and be-
queathed to Mary Ford, the wife of testator's grandson, Will-
iam Ford, certain property 'to be held and enjoyed by the said
Mary Ford for her sole and separate use, and free from the con-
trol of her husband, for and during the term of her natural life,
and at her death to be equally divided among her children,'
thus again vesting that portion of the property absolutely when
it reached the great-grandchildren of the testator.　In the next
item he bequeaths to his grandson, Coleman Ford, certain prop-
erty without any limitation of a life-estate.　So that, up to this
time, it can not be said that the testator exhibited any general
disposition to create a life-estate, especially not so in his great-
grandchildren.　Then follows the item which specially affects
this property, and which reads as follows: 'I give and be-
queath to my friend William Ezzard, of the State and county
aforesaid, to be held in trust by him for the use and benefit and
behoof of my great-grandson William Terrell, alias William
Terrell Ford, and to be held by the said trustee and managed
for the use and benefit of the said William Terrell Ford, [cer-

tain described property including that involved in this suit],
and upon the death of said Ezzard or his resignation of the said
trust, I desire that some other prudent and trustworthy per-
son be appointed by the judge of the superior court of said
county to take charge of and manage said property for the use
and benefit of said William Terrell Ford during his natural
life.' ˙Then follows the fifth or residuary clause already re-
ferred to, and finally the clause appointing the executor.

It is to be noted that in the clause of the will now under
special consideration, the provision is, 'I give and bequeath to
my friend William Ezzard, of the State and county aforesaid,
to be held in trust by him for the use and benefit and behoof of
my great-grandson William Terrell, alias William Terrell Ford,
and to be held by the said trustee and managed for the use
and benefit of the said William Terrell Ford,' certain property.
There is nothing in this devise or conveying part of the clause
with reference to any life-estate, or any limitation upon the
estate, but it devised the property absolutely for the benefit of
William Terrell Ford, unlimited by any reference to any life-
estate.    Under the law of Georgia, no words of inheritance are
required to create a fee-simple estate, and a conveyance with-
out words of inheritance will ordinarily carry the fee simple,
unless some lesser estate is expressly limited.    If this item had
stopped at this point, it is quite clear that it would have con-
veyed a fee-simple estate and not a life-estate.    But it is con-
tended that the latter part of this item limits the former, and
curtails the estate so as to limit it to a life-estate.    Nothing is
said about a life-estate in the conveying part of the item, as
already stated.    In the latter part of this item it is provided
that in case of the death or resignation of Ezzard, the trustee,
the testator desires that some other prudent and trustworthy
person be appointed by the judge of the superior court of said
county 'to take charge of and *manage said property for the use
and benefit of said William Terrell Ford during his natural life.*
It does not say that the title is limited or that the estate is de-
creased, restricted, or limited to a life-estate; but only, in case
of the death or resignation of the original trustee appointed by
the item, that some other person shall be appointed by the

superior court to manage and take charge of the property during his (William Terrell Ford's) natural life. There may be quite a difference between the time when some person is to manage the property, and the extent of the title.

Furthermore, I think the fifth item, immediately following, casts light upon the intention of the testator as to the fourth item. It provides, as already stated, that, 'as soon after my death as convenient, all the balance of my property be sold by my executor hereinafter appointed, and, after paying all my just debts, I desire the proceeds to be equally divided between the said Sileta Henson, Mary Ford, Coleman Ford, and William Ezzard as trustee as aforesaid for William Terrell Ford, to be held and enjoyed by the said Sileta, Mary, and their children respectively, in the same manner and upon the same conditions as they are to hold and enjoy the negroes hereinbefore bequeathed to them, and the said William Ezzard is to hold the said money as trustee and for the use and purposes as hereinbefore specified, to wit, for the use of the said William Terrell Ford.' Now, if the testator had intended or supposed that he was creating only a life-estate in the land devised in the fourth item, then by the fifth item he was providing that the remainder of this estate should be sold at once by his executor and the proceeds divided among the certain named devisees or legatees, including the trustee for the life-tenant as one of them. It can hardly be supposed that the testator intended to limit the estate created for his great-grandson to a life-estate, and provide for the sale of the remainder, which probably could not be reduced to possession for many years, as the life-tenant was then young, and yet intended that a portion of the proceeds of this very remainder should go to the life-tenant. This would be a compounding of estates which could hardly have been in the mind of the testator. So that the very natural conclusion arising from the fifth item would show the improbability of the testator intending to create only a life-estate by the fourth item.

It is contended by counsel that the expression, 'the said William Ezzard is to hold the said money as trustee for the use and purposes as hereinbefore specified, to wit, for the use of the said William Terrell Ford,' means that he was to hold but a life-

estate, and that the words 'as hereinbefore specified' referred to the last words of the previous item providing for a trustee to be appointed, in case of the death or resignation of Ezzard, to take care of and manage the estate for William Terrell Ford during 'his natural life.' On the contrary, it seems to me that the expression used in the fifth item in relation to the trustee distinctly negatives any such idea. It does not say that William Ezzard is to hold this fund in the manner in which some person who might be appointed to succeed him should hold or manage the property under the previous item, but that he should hold this fund as was provided for him to hold it in the previous item; and to make sure that there could be no mistake how William Ezzard was specified to hold it in the previous item, the testator took the trouble to repeat what he intended, 'to wit, for the use of the said William Terrell Ford.' Thus at the close of the fifth item he explains distinctly what he meant by the fourth item, and that the devise 'as hereinbefore specified' was meant by him to be for the use of the said William Terrell Ford, without any limitation for life or otherwise. If any regard is to be paid to the light to be drawn from the evidence dehors the will, it may be remarked that it appears that William Terrell junior was a young man who was known or considered in the family as being weak; and it is quite apparent that he was weak in character, whether he was in intellect or not; and this weakness had extended to the point of landing him in the penitentiary. Therefore there might be a very considerable reason why the testator might have thought it necessary to have some person to handle and manage the property for him, and yet not cut off his inheritance.

It is insisted, however, by counsel for the plaintiffs that there was no reason shown, and no facts shown, which would in law authorize a trust for William Terrell junior. If this be taken as correct, the result would be, not to destroy or limit his estate, but to vest in him the estate instead of leaving it in a trustee. If, therefore, a trust was conveyed to William Ezzard in fee simple, and William Terrell junior, upon becoming of age, was capable of managing his estate so that no continuing trust could be made for him, the result would be, not to limit his estate,

but to vest it absolutely in him. It does not appear from the evidence that William Ezzard died or resigned, or any other person was ever appointed in his place under the last clause of the fourth item; so that if, under the contingency of a second appointment, there might have been any limitation placed upon the estate, it never occurred, but the estate stood where it was originally created by the devise creating William Ezzard trustee, and was not changed by any change of trustee or any subsequent appointment. If A. conveys an estate in trust for B. and B. is of age and capable of taking the estate, and not a person for whom a trust can be created, the result is that B. takes in fee simple; and if such a fee-simple estate is created for B., but the creator of the estate undertakes to appoint some person to manage the property for B., either for a limited time or for life, this does not limit, curtail, or destroy any estate in B., but the only result is that B. can manage his own property and take it away from the agent, trustee, or person before appointed. Thus then, regarding the whole will, and what seems to me to be the evident intention of the testator, it is quite clear to my mind that the estate created in this land by the fourth item was a fee-simple estate and not a mere life-tenancy. This being true, there could be no recovery by these plaintiffs as being descendants of William Terrell through his grandchildren on the ground that there was an intestacy as to a remainder interest in this estate; and, for the reasons which I have already given, it is quite clear to my mind that the testator never intended or contemplated that there was any remainder interest in this land which could be covered by the fifth item or residuary clause in his will, and that there can be no recovery under that."

*Judgment affirmed. All the Justices concurring.*