## KNOWLES v. KNOWLES et al.

1. A testatrix, who died leaving two sons, disposed of her property by will as follows: (1) "I give, devise, and bequeath to my eldest son, Oscar B. Knowles, one feather-bed." (2) "I give, devise, and bequeath to the wife and legal heirs of James N. Knowles, my youngest son, all my household furniture, except the feather-bed above willed to Oscar B. Knowles, also all my stock consisting of horses, mules, cattle, and hogs, that I may be in possession of at the time of my death, also all of my lands [describing them]. In the event James N. Knowles dies without wife or heirs, then the above property I will and bequeath to the heirs of Oscar B. Knowles. Lastly I do nominate and appoint my son James N. Knowles to be the executor of this my last will and testament." At the time of making the will, and of the death of the testatrix, the younger son was unmarried. Subsequently he married, and afterwards the will was probated in solemn form, and letters testamentary issued to him. *Held*, that the testamentary scheme contemplated that the property devised by the second item should be held by the executor until the son James N. married, when the title thereto should vest in the wife, subject to be shared by future-born children of James N., and defeasible upon the contingency of the death of James N. without wife or children, with remainder over, upon the happening of such contingency, to the children of O. B. Knowles.

2. As it is the duty of an executor to administer the undevised as well as the devised property of a testator, a judgment of the court of ordinary specifically declaring a partial intestacy as to property devised by a will probated in solemn form, and in the hands of the executor, and appointing an administrator to administer the property adjudicated as not passing by the will, without removing the executor, is void on its face.

Submitted February 8,—Decided June 24, 1909.

Equitable petition. Before Judge Reagan. Butts superior court. February 17, 1908.

Mrs. L. C. Knowles died in August, 1895, seized and possessed of an estate of personalty and realty, and leaving as her sole heirs at law her two sons, O. B. Knowles and James N. Knowles. Immediately after the death of his mother J. N. Knowles took possession of her estate. He offered for probate a paper purporting to be the last will and testament of his mother, which was duly probated in common form in January, 1899; and afterwards, in August of the same year, it was probated in solemn form. J. N. Knowles was nominated as executor; and after his qualification as such, letters testamentary were issued to him. The material parts of the will of Mrs. L. C. Knowles are as follows: (1) "Item. I give, devise, and bequeath to my eldest son, Oscar B. Knowles,

one feather-bed." (2) "Item. I give, devise, and bequeath to the wife and legal heirs of James N. Knowles, my youngest son, all my household furniture, except the feather-bed above willed to Oscar B. Knowles, also all my stock consisting of horses, mules, cattle, and hogs, that I may be in possession of at the time of my death, also all of my lands [describing them]. In the event James N. Knowles dies without wife or heirs, then the above property I will and bequeath to the heirs of Oscar B. Knowles. Lastly I do nominate and appoint my son James N. Knowles to be the executor of this my last will and testament."

At the time of her death James N. Knowles was unmarried, and he did not marry until some time in November, 1897. After the probate of the will in solemn form, J. N. Knowles as executor delivered to his wife possession of the property therein devised to his wife and legal heirs, and the feather-bed to O. B. Knowles. In April, 1904, O. B. Knowles, construing the devise to the wife of J. N. Knowles and his legal heirs as void for uncertainty as to the beneficiary intended therein (J. N. Knowles, at the time of the death of the testator and at the time of the execution of the will, having neither wife nor children), and acting upon such construction, filed his petition in the court of ordinary to be appointed administrator of Mrs. L. C. Knowles; and the wife of J. N. Knowles, in behalf of herself and her minor child, caveated the application, on the ground that Mrs. L. C. Knowles died testate as to all of her property. After hearing the issue made by the caveat to the application, it was adjudged by the court of ordinary, at the June term, 1904, that Mrs. L. C. Knowles died intestate as to all of her property mentioned in her will, except as to the feather-bed bequeathed to O. B. Knowles; and the ordinary appointed J. N. Knowles administrator of the estate of his mother as to all of the property which did not pass by the terms of the will. J. N. Knowles qualified as such administrator, but refused to point out any property as belonging to the estate of his mother to the appraisers appointed by the ordinary. The appraisers having made their return that the administrator refused to point out to them any property belonging to the estate of Mrs. L. C. Knowles, O. B. Knowles filed an application to have J. N. Knowles removed as such administrator, and at the February term, 1905, an order was passed by the ordinary removing J. N. Knowles

as administrator and appointing J. A. McMichael in his stead. McMichael refused to qualify. Immediately thereafter J. N. Knowles applied to the ordinary, as executor of the estate of his mother, for leave to sell the real estate belonging to his testatrix, for the purpose of distribution; to which application O. B. Knowles filed a caveat. The ordinary granted the order to sell, and the case was appealed to the superior court; and while on appeal J. N. Knowles withdrew his application for leave to sell. Upon the withdrawal of the application for leave to sell, J. N. Knowles filed a petition in the court of ordinary to vacate the judgment of the court rendered at the June term, 1904, declaring that his mother had died intestate as to all her property except the feather-bed bequeathed to O. B. Knowles. Shortly thereafter O. B. Knowles filed his petition to the superior court against J. N. Knowles and his wife, alleging the foregoing facts, and the insolvency of the defendants, and praying that J. N. Knowles be enjoined from further prosecuting the proceeding in the court of ordinary to vacate the judgment of June, 1904, that a receiver be appointed, that an accounting be had, and that the estate be administered by the receiver and divided between J. N. Knowles and O. B. Knowles, the amount found to be due by J. N. Knowles to O. B. Knowles to be deducted from the distributive share of J. N. Knowles. The defendants demurred to the petition, on the grounds, that it was without equity; that the plaintiff had an adequate remedy at law; that there was a nonjoinder of parties, in that J. N. Knowles as executor of the estate of L. C. Knowles was a necessary party; and a misjoinder of parties, in that J. N. Knowles in his individual capacity was not a proper party. The petition was dismissed, and the plaintiff excepted.

*Frank Z. Curry* and *John I. & J. E. Hall,* for plaintiff.

*O. M. Duke,* for defendant.

EVANS, P. J. (After stating the foregoing facts.)

1. The two controlling questions in this case are: (1) Was the devise to the wife and legal heirs of J. N. Knowles void because of uncertainty as to the beneficiary? (2) Did the adjudication by the court of ordinary, after the probate of the will of Mrs. L. C. Knowles, that she died intestate as to all the property therein sought to be devised, except the feather-bed, and the appointing of an administrator to distribute the same as in the case

of an intestacy, have the effect to declare an intestacy as to such property? As to the first question, the general rule is that where there is a devise of an immediate interest in property, only those take who are in esse at the time of the testator's death. The deduction from this rule by the plaintiff in error is, that, as J. N. Knowles was alive and unmarried at the time of the death of the testatrix, there could be no person answering to the description of "wife and legal heirs of James N. Knowles," and therefore the devise is void, and the estate therein named passes to the heirs of the testatrix. It is the duty of courts, in construing wills, to diligently inquire from the will the dispositive scheme of the testator. A glance at the will in the present case discloses that the purpose of the testatrix was not so much to make her sons the immediate objects of her bounty as it was to give to the wife and children of the younger son, and, in the event of his death without such, to the children of her elder son, the bulk of her estate. With the inconsequential exception of a feather-bed, the residue of her property after paying her debts is disposed of in the third item of her will. At the time the will was executed the younger son was unmarried; and as his age does not appear, it is not unreasonable to indulge the presumption that the testatrix anticipated his marriage prior to her death. The manifest objects of her bounty, in case her son James N. married, were his wife and children. This is reflected from her language in this item in which she further provides that should her son James N. Knowles die without wife or heirs, then the property devised to his wife and legal heirs should go to the heirs of O. B. Knowles, her older son. The expressions "heirs" and "legal heirs" are shown by the context to mean "children." See also Civil Code, §3084. The law also contemplates that an estate may be held in abeyance. Civil Code, §3083. If the devise had been to J. N. Knowles in trust for any future wife or children which he might have, and, if he should die without wife or child, with remainder over to the children of his older brother, it would be clear that the legal estate would rest in the trustee, and immediately upon the happening of the contingency of J. N. Knowles's marriage, the wife would take as cestui que trust, and the number of cestuis que trustent would be enlarged upon the birth of subsequent children. In 1764, Lord Chancellor Northington had a similar question before him in the case of

Shepherd *v.* Ingram, Ambler's Reports, 448. In that case the testator gave his freehold, leasehold, and copyhold estates, and also his personal estate, to trustees to pay certain annuities and legacies. After the payment of these, the testator gave the residue of his estate to such child or children as his daughter might have, to be equally divided between them, with a bequest over to another if the daughter should die without leaving issue. It is reported that Lord Northington was very clear of opinion that the children of the daughter took a vested interest defeasible, and that the children as they are respectively born take the accruing interest equally. In the English case of Weld *v.* Bradbury, 2 Vern. 705, it was held, that where one devises the surplus of his personal estate to the children of A. and B., neither of whom has a child at the time of the making of the will or the death of the testator, in such a case the devise is executory, and shall extend to any children that A. and B. shall afterwards have; and this ruling was followed in Hutcheson *v.* Jones, 2 Maddock, 124. The testamentary intent of Mrs. L. C. Knowles being so clear as to create a defeasible fee in those persons who may thereafter fill the description as wife and children of J. N. Knowles, such intent should not be thwarted because of a technical failure to devise the legal title to some locum tenens until the happening of either contingency, to wit, the marriage of J. N. Knowles, or his death without leaving wife or child. An executor sustains the relation of a quasi trustee to the estate of his testator. The office of executor is for the purpose of giving effect to any lawful testamentary disposition of the testator's property; and if the disposition is by executory devise wherein the title is temporarily in nubibus, in order to prevent a defeat of the testamentary scheme the law will devolve upon the executor the duty of holding the legal title to the property disposed of by executory devise, until the contingency expressed by the testator for the vesting of the estate happens, when the executor may be relieved of his trust by turning the estate over to the person to whom it is devised. Here the wife and children of J. N. Knowles take under the will as executory devisees, and the executor held the estate therein devised to them as a quasi trustee until the marriage of J. N. Knowles, when the estate so devised to his wife and children vested in his wife, subject to be shared by future-born children of J. N. Knowles, and defeasible

upon the contingency of his death without wife or children, with remainder over, upon the happening of such contingency, to the children of O. B. Knowles. See Luke on Property in Land (2nd ed.), 267. Upon this construction of the will, O. B. Knowles has no interest in the property devised in the second item of the will, and therefore no right to maintain this proceeding, unless, under the allegations of the petition the judgment of the ordinary, subsequently to the probate of the will in solemn form, declaring an intestacy as to the property devised under the second item thereof, had the effect to nullify the devise to Mrs. Knowles and children.

2. The court of ordinary has general jurisdiction as to the probate of wills, and the administration of estates. That jurisdiction embraces the right to inquire as to whether a person leaving an estate died testate or intestate. It also includes the right to vacate a judgment declaring an intestacy upon the discovery of a will and the due probate thereof. It likewise extends to a vacation of a judgment probating a will obtained by fraud. The court of ordinary may inquire into whether a will has been made; but if the terms of that will are in doubt, a court of equity is the proper court wherein may be ascertained the meaning of the testator as expressed in the will. *Drane v. Beall,* 21 *Ga.* 21; *Cook v. Weaver,* 77 *Ga.* 10 (2). The judgment of the court of ordinary admitting a will to probate in solemn form, until set aside, is conclusive upon all parties served, that the paper propounded is the last will and testament of the maker; and thereafter the title that parties may take thereunder can not be revoked except in a direct proceeding with the proper parties before the court. It also appears that several years anterior to the application of the plaintiff to declare a partial intestacy, the wife of J. N. Knowles had been in possession of the property devised in the second item of the will, with the assent of the executor, and after his assent to the legacy the estate of Mrs. L. C. Knowles ceased to have any interest therein, and no judgment declaring a partial intestacy as to such property could have the effect of divesting the devisees' title, and restoring it to the estate. Besides, it is the duty of an executor to administer the undevised as well as the devised estate of his testator. Civil Code, §3313; *Lamar v. Gardner,* 113 *Ga.* 781 (39 S. E. 498). The court of ordinary would, therefore have no juris-

diction to grant administration upon the estate to another, so long as the duly qualified executor was entitled to, and charged by law with, the administration of the estate, without first revoking his letters. *Dickerson* v. *Bowen, 128 Ga. 122.* Therefore the judgment declaring an intestacy of Mrs. L. C. Knowles as to the property devised in the second item of her will, and appointing an administrator to fill such office, which was already filled by a duly appointed officer of the court, was void.

*Judgment affirmed. All the Justices concur, except Beck, J., disqualified.*