WOOD, administrator, <em>et al. v.</em> OWEN <em>et al.</em>

1. A will contained the following item: "I give, bequeath, and devise to my beloved wife, Arminda N. Wood, all of my lands and tenements belonging to the same in any wise, and also all my stock, and also my wagons, buggy, and also my household and kitchen furniture, all without limitation or reserve, for her to do as she thinks best for

herself and all of my lawful heirs; and also I make Archa M. Wood, equal with the rest of my heirs." There was no other provision qualifying or explaining this item, nor did the evidence throw light upon it further than, to show that the testator owned one hundred acres of land, on which his widow, who was feeble, lived and from which she derived a support. *Held,* that she had authority to convey to one of the children of herself and the testator twenty acres of the land in fee, in consideration of an agreement that the grantee would stay with and care for the grantor during her life.

(*a*) The consideration expressed in the deed was natural love and affection; but the plaintiffs alleged and sought to show that the real consideration was such a promise as that stated above.

2. There was no evidence showing that the grantor did not know the statement of the consideration in the deed, or had not sufficient opportunity for knowing it; and a request to charge based on a contrary hypothesis was properly refused.

3. If a deed conveying land in fee simple was made in consideration that the grantee agreed to remain with the grantor and wait on and care for her, and a year or so thereafter the grantee moved' away and married, this alone would not render the deed void, but in the absence of fraud or special facts, such as insolvency, the remedy would be by an action for breach of the contract. *McCardle* v. *Kennedy,* 92 *Ga.* 198 (17 S. E. 1001, 44 Am. St. R. 85) ; *Lindsey* v. *Lindsey,* 62 *Ga.* 546; *Kytle* v. *Kytle,* 128 *Ga.* 387 (57 S. E. 748).

4. When the evidence for the plaintiffs tended' to show that at the time when or before the deed, which expressed on *its* face a consideration of love and affection, was executed, a parol promise of the grantee to stay with and care for the grantor, who was feeble, was made in 1896, and that the grantee left the place and married during the following year, and ceased to remain with or care for the grantor, but that the grantor never sought to cancel or rescind' the conveyance before her death in 1905; and where in 1907 a person who was her administrator, and also that of the testator, and the other heirs of herself and the testator sought to set aside the conveyance and recover the land, they were not entitled to recover, although they alleged insolvency of the grantee at that time, and one or two of them testified that she had nothing of which they knew except her interest in the estate.

Argued June 10, 1909.—Decided January 13, 1910.

Equitable petition. Before Judge Edwards. Paulding superior court. December 3, 1908.

*J. S. James,* for plaintiffs.     *W. E. Spinks,* for defendants.

LUMPKIN, J. The case before us furnishes a new illustration of the old statement that "no case upon a will has a brother," for no will which has come under our observation bears a very striking family resemblance to this one,—certainly not enough to cause them to have the appearance of testamentary doubles. We must

look at this unique will in the light of its own terms. The plantation contained one hundred acres. The widow conveyed twenty of them to one of the children. The others are dissatisfied. It does not require any particular formula to create a precatory trust. In one case where there was a devise of a plantation to a son of the testator, and a bequest of a negro slave to the wife of the former, followed by the statement that "I also allow my son Henry to give her a support off of my plantation during her lifetime," this was sufficient to create a charge on the land for the support of the testator's wife. *Hunter* v. *Stembridge,* 12 *Ga.* 192. In the Civil Code, §3162, it is declared that "Precatory or recommendatory words will create a trust, if they are sufficiently imperative to show that it is not left discretionary with the party to act or not, and if the subject-matter of the trust is defined with sufficient certainty, and if the object is also certainly defined, and the mode in which the trust is to be executed." If it were held that a precatory trust was created, or a charge on the property in favor of the testator's heirs, which prevented his wife from making a conveyance of it, as against a claim of title by them, certainly this would be a limitation or reservation engrafted on the conveyance to her; but the testator distinctly declares that the property was left to his wife "without limitation or reserve, for her to do as she thinks best," etc. To hold that the testator carefully stated in express words that the devise and bequest were without limitation or reserve, and yet that in the same sentence he placed such a limitation on it that she could convey no perfect title, would be a contradiction in terms. Under the will she had power to make a conveyance of the twenty acres, and such conveyance would carry title as against the other heirs of the testator. The parol evidence throws little light on the will, except to show that the wife of the testator was feeble and had to look to this land for support. The statement that he made Archa M. Wood equal with the rest of his heirs might look somewhat like contemplating an estate for his heirs. Who Archa M. Wood was does not appear; and such a vague and doubtful reference should not suffice to limit the estate and power plainly given to the wife. Civil Code of 1895, §§3083, 3085; *Cook* v. *Walker,* 15 *Ga.* 457; *Felton* v. *Hill,* 41 *Ga.* 554; *Ford* v. *Gill,* 109 *Ga.* 691 (35 S. E. 156).

If the testator's wife had a right to convey the land, the other

48

branch of the case rests on the allegation and evidence as to the agreement of the grantee which furnished a consideration for the deed. On its face it was a deed of gift, and there was no evidence to show that this was unknown to the maker, or any reason why it could not have been known to her. It was alleged in the amended petition of the plaintiffs that the grantee promised to "faithfully and continuously maintain, support, and care for and render all services necessary to her as long as she lived." The evidence was less extensive. It tended to show that the grantee told her mother that she would take care of the latter as long as she lived. One witness, after making this statement, testified that she "would support her, I supposed; that was the way I understood it, was to support her." Another stated that the grantee said she would stay there and wait on her mother and take care of her as long as she lived. "We did not insist that she was to furnish the money out of her own pocket to buy the support, etc. We expected to get that out of the land. The point we make is, that, after she married, she went away and did not stay there with her and help care for her." There was no evidence of any actual fraud perpetrated by the grantee on the grantor, or that the former did not intend to comply with her agreement when it was made. The year following she married and moved away. The property remained in the possession and control of the mother until her death. She did not sue for any breach of contract or take any steps to set aside the deed. After she died, in 1905, by consent the plantation was cultivated for a year, and then the rest of the property was sold, and a partial distribution of the proceeds was made. Mrs. Owen, the grantee in the deed from her mother, sold to a third party (also made a defendant) the twenty acres. The other children, and W. B. Wood, as administrator of both the grantor and also of her husband, the testator, brought this suit in 1907. No agreement to support was recited in the deed to Mrs. Owen, so as to make the period of limitation for suit for a breach twenty years. See *Kytle* v. *Kytle*, 128 *Ga.* 388 (3), 392; *Nathans* v. *Arkwright*, 66 *Ga.* 179; *Bentley* v. *Greer*, 100 *Ga.* 35 (27 S. E. 974); Civil Code, §3711. The evidence tending to show insolvency or inability of Mrs. Wood to respond in damages in 1908, at the time of the trial, was of a negative character, and it appeared that at some time before that she had conducted a business as a milliner.

Under the evidence these plaintiffs can not recover; and if there were any inaccuracies in the charges or rulings of the court, they do not require a new trial.

*Judgment affirmed. All the Justices concur.*