McARTHUR *et al. v.* BONE.

No. 11653. FEBRUARY 10, 1937.

*R. L. Maynard,* for plaintiffs in error. *J. A. Hixon,* contra.

JENKINS, Justice. The plaintiff filed a suit in ejectment for the recovery of an undivided third interest in certain described

land. Her claim of title was based on the following item in the will of Sallie Wallace: "I give and bequeath unto Annie Lou Knight, the wife of my nephew, Henry Knight, and her living heirs, all my worldly possessions of every kind, consisting of money, real and personal property." At the time of the making of the will and at the time of the death of the testatrix, Mrs. Knight had two living children, one of them being the plaintiff. On the overruling of a demurrer to the petition setting out these facts, the sole question presented is whether, under the language of the legacy and the existence of the children as stated, the mother took all of the property in fee simple, or whether the children took with her, as tenants in common, each an undivided third interest.

The test in construing the words "and her living heirs," as here used and under the facts disclosed, is whether they be words of purchase or words of limitation. If they be taken as words of limitation, the defendants' demurrer to the petition should have been sustained, for the reason that the legacy would thus have put the fee-simple title of the entire property in the mother. If, on the other hand, the words mentioned be construed as words of purchase, then the plaintiff should recover her proportionate interest in the estate as a tenant in common, and the judgment overruling the demurrer should be affirmed. If the word "heirs" stood alone, it would manifestly connote the idea of limitation only. Almost every deed conveying a fee-simple estate is made to a named grantee, his heirs and assigns. Indeed, according to the English rule, at least as it existed when our rules of jurisprudence were being formulated, in order to create a fee the use of some such word was necessary. Under that rule, a grant or devise to A vested in him a life-estate only. *Clements* v. *Glass*, 23 *Ga.* 395, 397. Our rule in this respect was changed by the act of 1821 (Code, § 85-503), which declared that "the word 'heirs,' or its equivalent, is not necessary to create an absolute estate; but every conveyance, properly executed, shall be construed to convey the fee, unless a less estate is mentioned and limited in such conveyance." In the case before us no contention is made by either side that the words of the devise did in fact create a less estate than the fee in the first taker or takers. There is no contention that there is any valid limitation over in remainder. The sole contro-

versy devolves about the question, not as to *what* interest the first taker or takers acquired, but as to *who,* under the language used, should be included as first taker or takers in the fee-simple estate. If. the language of the legacy expressly sought to do that which the law prohibits, that is to create an estate in favor of Mrs. Knight and her descendants in perpetuity, then under the penalty imposed by the Code, § 85-505, the estate would vest in fee simple in Mrs. Knight as first taker. Thus it has often been held that a gift or grant to A and the. heirs of his body, or words of similar import, operates to vest the full fee-simple title in A. *Whalley* v. *Barker,* 79 *Ga.* 790 (4 S. E. 387) ; *Durant* v. *Miller,* 88 *Ga.* 251 (14 S. E. 612) ; *Griffin* v. *Stewart,* 101 *Ga.* 720 (29 S. E. 29) ; *Lane* v. *Cordell,* 147 *Ga.* 100 (92 S. E. 887) ; *Scott* v. *Harley,* 152 *Ga.* 537 (110 S. E. 285) ; *Mosley* v. *Brown,* 154 *Ga.* 769 (115 S. E. 260) ; *McCraw* v. *Webb,* 134 *Ga.* 579 (68 S. E. 324) ; *Munford* v. *Peeples,* 152 *Ga.* 31 (108 S. E. 454). This rule would not apply, however, where a less estate has been carved out, and the term "heirs of his body" is used in connection with a limitation over in remainder. The Code, § 85-504, as said by Judge Bleckley in *Ewing* v. *Shropshire,* 80 *Ga.* 374, 377 (7 S. E. 554), worked a radical change in the prior law, and modified the rule in Shelley's case by making the words, "heirs," "heirs of body," "lawful heirs," "issue," and words of similar import, always import purchase and not limitation when used in *limitation over.* See also *Hertz* v. *Abrahams,* 110 *Ga.* 707 (36 S. E. 409, 50 L. R. A. 361). In the case now before us, there being no "limitation over," are the words "to K. and her living heirs" equivalent to the words "to K. and her heirs" or "to K. and the heirs of her body?" If so, under the numerous cases cited for the plaintiffs in error, K. (Mrs. Knight) would take the fee-simple title to the entire property. Since, as we have seen, where, as here, there is no "limitation over," so as to come within the provisions of the Code, § 85-504, the words, "heirs," "heirs of body," etc., imply limitation and not purchase. Does the addition of the word "living" to the word "heirs," so that the devise is "to K. and her living heirs," operate to change the rule? The reason why, in the absence of a limitation over, a grant to A and her heirs, bodily heirs, lineal heirs, etc., is violative of the prohibition of the estate-tail statute is that it attempts to create an express tail estate, and

in so doing runs counter to the rule against perpetuities. Does a grant "to K. and her *living* heirs" do so? We do not think so. Under such a devise, the only persons who could be included in the devise to K. and her living heirs are such of her heirs as may be living at the time that the estate should vest. This can not be taken as violative of the rule against perpetuities. Therefore if it can be ascertained, from the language of the instrument and the facts set forth by the petition, who it was that the testatrix intended should take together with Mrs. K., there seems no reason why effect should not be given to the devise. In other words, we will look to see if it be ascertainable who it is that comes within the class designated as the "living heirs" of Mrs. K. The Code, § 85-504, dealing with limitations over to "heirs," "heirs of the body," "lineal heirs," etc., specifically declares that such words shall be held to mean "children." As was said by Chief Justice Russell, in *Keith* v. *Chastain,* 157 *Ga.* 1, 6 (121 S. E. 233), quoting from Judge Bleckley in *Ewing* v. *Shropshire,* supra: "We are satisfied that 'children' is now as broadly and generally a word of purchase as it ever was, and that when the extrinsic condition formerly required, namely the existence of children or a child, is present, it is no less a word of purchase touching the first or only estate granted, than in respect to limitations over." See, in this connection; Riley *v.* Day, 88 Kan. 503 (129 Pac. 524, 44 L. R. A. 296), in which it was held that the words "living issue," as used by an amendment to a statute, must be construed as having been used in the sense of "living children." See also 4 Words and Phrases (2d), 260, where it is stated that "the words 'remaining living heirs,' as used in a will providing that in case of the death of either one of four children the property willed to either of them was to be equally divided to the remaining living heirs of testator, mean his surviving children and the children of any such child deceased;" citing In re Harrington's Will, 142 Wis. 447 (125 N. W. 986, 991). In the case now before us, since it is shown by the petition that Mrs. Knight, at the time of the making of the will and at the time of the death of the testatrix and at the time the will was probated, had two "living heirs," her children, a son and a daughter (the plaintiff), it follows that under the terms of the will an estate of tenancy in common to the mother

and those two children was created, and that the court did not err in overruling the demurrer.

*Judgment affirmed.   All the Justices concur.*