LANE *v.* CITIZENS AND SOUTHERN NATIONAL BANK, trustee, *et al.*

No. 14463.  MAY 6, 1943.

*Kennedy, McWhorter & Jenkins,* for plaintiff.
*Wilcox, Connell & Wilcox,* for defendants.

REID, Chief Justice.  The question involved in this case arises from a construction of the will of R. Y. Lane.  The will was executed in 1916.  His death occurred in 1917, and the will was thereupon probated.  At the time he executed the will and at the date of his death his heirs at law were his widow and six children, namely, Mary Lane Denmark, Walter T. Lane, Mills B. Lane, Edward W. Lane, all of whom were married and had children, John Lane, whose wife was dead and who had a living son, I. Tillman Lane, and Ben L. Lane, who at the time was not married.  John Lane died in November, 1917, after the death of his father, leaving no widow surviving him, but leaving I. Tillman Lane as his sole heir at law.  Mrs. R. Y. Lane died on January 16, 1918, leaving as her heirs at law the children above named of R. Y. Lane and her grandson, I. Tillman Lane.  On May 5, 1925, Ben L. Lane was married to Miss Pauline H. Brack, and they lived together as husband and wife until his death in February, 1941.  There was no issue of this marriage, and Ben L. Lane died without leaving a

child or representative thereof. Ben L. Lane had made a will which was probated in 1941, and in which he left all of his property to his wife, Mrs. Pauline Lane. The entire estate of R. Y. Lane, deceased, was devised by item 1 of his will. The share of Ben L. Lane, his son, and the husband of the plaintiff in error, is dealt with in item 1-c thereof. Item 1 of the will is as follows: "I give, devise, and bequeath all of my estate, property, and effects to my trustees hereinafter named, to be held in trust upon the following uses, trusts, and limitations: (a) The entire net income of my trust estate shall be paid to my wife for and during her life; said income to be paid to her by my trustee in quarterly, semi-annual, or annual installments, as they may deem most practicable. (b) Immediately upon the death of my wife, my trustees shall divide said estate into six equal parts or shares. One shall go in fee simple and be delivered by my trustees to each of my children, namely: Mary Lane Denmark, Walter T. Lane, Mills B. Lane, and Edward W. Lane, or the lineal heirs of any of said children who may not be in life at that time, the lineal heirs of any deceased child to take only the share that would have gone to their deceased parent and in accordance with the laws of inheritance. (c) The two remaining shares shall be retained by my trustees and held upon the following additional trusts and limitations: The entire net income of one share shall be paid to my son, John Lane, for and during his natural life; and at his death the corpus of such share shall go in fee simple and be delivered to his heirs at law. The entire net income of the other share shall be paid to my son, Ben L. Lane, for and during his natural life; and at his death the corpus shall go in fee simple and be delivered to his heirs at law. The net income from the two shares so held in trust shall be payable only to the respective beneficiaries above named, and shall not be subject to garnishment, attachment, or any other legal process." Mrs. Pauline B. Lane, as widow and sole heir at law of Ben L. Lane and as executrix under his will, brought her petition against the Citizens and Southern National Bank, the substituted trustee, seeking to recover and have delivered to her the one sixth share which, after the death of Mrs. R. Y. Lane, the trustee under item 1-c of the will had retained and the income from which had been paid to her husband during his life. She asserted that she as the sole heir at law of her deceased husband, Ben L. Lane, was

entitled under the terms of the will to his share of the estate, claiming also that under the will a fee-simple title to his one sixth part had vested in Ben L. Lane and was merely held in trust as a spendthrift trust set up in his behalf, and that it was not held as a life-estate only for him. All of the heirs at law of R. Y. Lane were made parties, and they filed a joint demurrer and joint answer to her petition. The defendants, who are the present living children of R. Y. Lane and their descendants, contended that under the will Ben L. Lane took a life-estate only in trust, with a limitation over of remainder to his children; that, since he died leaving no children or representative of children, the remainder failed for the lack of a remainderman to take, creating an intestacy as to his share, which reverted to the estate of R. Y. Lane as of the date of the death of R. Y. Lane; that this remainder estate should be divided into six parts, one part to go to each of the living children of R. Y. Lane, and the share of a deceased child to go to whomever would take under the statute of descent and distribution. In this way the share of the one sixth interest in Ben L. Lane would go to the plaintiff. The case was submitted to the judge upon a stipulation of facts in substantial conformity to what is stated above, and upon consent determined by him without the intervention of a jury. He held in accordance with the contentions of the defendants, and ordered the trustee to make delivery in accordance therewith. Error is assigned on this judgment.

1. The rules of law which must govern this case are not in any sense disputed. They are fully recognized and familiar. As is so often the case, any difficulty presented arises in their application. We may start out with the familiar approach that in the construction of a will the intention of the testator as manifested in its terms must control. Code, § 113-806; *Hertz* v. *Abrahams,* 110 *Ga.* 707, 708 (36 S. E. 409, 50 L. R. A. 361) ; *Sumpter* v. *Carter,* 115 *Ga.* 893, 896 (42 S. E. 324, 60 L. R. A. 274) ; *Comer* v. *Citizens & Southern National Bank,* 182 *Ga.* 1, 5 (185 S. E. 77). In *Williams* v. *McIntyre,* 8 *Ga.* 34, 36, Nisbet, J., speaking for the court, said: "The first thing to be ascertained, in the construction of a will, is the intention of the testator. In the language of the books, that is the polar star. The intention is imperative on the courts, unless it is in conflict with some established rule of law. If it is, the law is more imperious than the intention, and the latter

will yield to the former. The law, though, in order to defeat the intention, must be clearly and decidedly in conflict with it. The courts will studiously give effect to the intention, unless constrained by the law to disregard it. No man's will is so high in its obligations upon the courts as the laws of the land. If the intention could prevail against the law, then the will of a testator would make or repeal the law. The effect would be, that there would be no law to regulate the transmission of property by will. The intention is to be ascertained, primarily, from the will itself. That is, generally, the highest and best evidence of it. In most cases, it is the *only* evidence. The testator having *written* his will, the *writing* is the exponent of his intentions, and if that is clear—if, in the will itself, there is no ambiguity—it is solemnly obligatory upon the court, and it can resort nowhere else." Another rule to be considered in this case and of equal force and certainty is, as will be presently noticed, that certain words and expressions must be given a rigid and fixed meaning in specified instances.

Does the devise in item 1-c which relates to Ben L. Lane contain a limitation over, does it create in him a life-estate only, or did it vest in him in fee simple? If a limitation over is involved, are the words "heirs at law" "words of similar import," so as to require the meaning specified in the Code, § 85-504? Despite these considerations, was it the intention of the testator, so plainly and clearly manifested as to require the conclusion, that the words "heirs at law" must be given the meaning accorded to them generally under the laws of descent and distribution, rather than the more narrow and restricted meaning specified in the Code? Was the trust for the life-tenant and remaindermen, if any, or was it merely a spendthrift trust? The main question thus expands. "An estate for life may be either for the life of the tenant or for the life of some other person or persons." Code, § 85-601. "An estate in remainder is one limited to be enjoyed after another estate is determined, or at a time specified in the future." § 85-701. "What is a 'limitation over'? In a large sense, and no doubt in the sense intended by the Code, it includes any estate in the same property created or contemplated by the conveyance to be enjoyed after the first estate granted expires or is exhausted. . . When two or more estates of freehold in the same property are granted by the same conveyance to be enjoyed successively, or one in lieu

of another, each of them, except the first, is a limitation over." *Ewing* v. *Shropshire,* 80 *Ga.* 374, 377, 378, 379 (7 S. E. 554). The will leaves the testator's property to a trustee, but the intervention of a trustee does not prevent application of the usual rules of construction, just as if the property had been devised in the form of legal estate. *Hollis* v. *Lawton,* 107 *Ga.* 102, 105 (32 S. E. 846, 73 Am. St. R. 114); *Beauchamp* v. *Fitzpatrick,* 133 *Ga.* 412 (65 S. E. 884); *Singer* v. *First National Bank & Trust Co.,* 195 *Ga.* 269 (24 S. E. 2d, 47). The will directs that the property be held in trust, first for the use of the testator's widow for life, secondly for the use of the testator's son, Ben L. Lane, during his life, and thirdly at his death to deliver over the "corpus" or remainder to his "heirs at law," free and relieved of the trust. While the word "remainder" is not used to describe the estate of the last beneficiaries, it seems reasonably plain and clear that the "corpus" thus to go and be delivered to the final beneficiaries is a "remainder" in every sense of its term; for it is an estate to be enjoyed in succession, after the expiration of the two particular estates preceding it, to wit: first, an estate for life in the widow of the testator; and secondly, an estate for the life of Ben L. Lane. It was to be enjoyed after the prior estates had been "exhausted," as pointed out in *Ewing* v. *Shropshire,* supra. The prior or lesser estates were carved out, as in *Palmer* v. *Alwood,* 188 *Ga.* 99 (3 S. E. 2d, 63), before the estate to be enjoyed after Ben L. Lane's death, which differentiates this from such cases as *Ford* v. *Gill,* 109 *Ga.* 691 (35 S. E. 156), where there was no "remainder," and *McArthur* v. *Bone,* 183 *Ga.* 796, 798, 799 (189 S. E. 831), as well as *Cooper* v. *Harkness,* 188 *Ga.* 121, 127 (2 S. E. 2d, 918), which will later be further considered; and also *Hubbard* v. *Turner,* 93 *Ga.* 752 (20 S. E. 640, 30 L. R. A. 593). It thus appears that we have here a "limitation over" to the "heirs at law" of Ben L. Lane, and it would seem clear that section 85-504 of the Code should be applied. That section reads as follows: "Limitations over to 'heirs,' 'heirs of the body,' 'lineal heirs,' 'lawful heirs,' 'issue,' or words of similar import, shall be held to mean 'children,' whether the parents are alive or dead; and under such words children, and the descendants of deceased children, by representation in being at the time of the vesting of the estate, shall take." It is true that this Code section does not contain literally the words "heirs at

law" which are used in the devise now under consideration; but we see no escape from the conclusion that the Code section does embrace a limitation over as if in those exact words. In the first place, the terms "heirs" and "lawful heirs" necessarily mean the same as "heirs at law;" this for the reason that no one can be an "heir" or a "lawful heir" unless he is made so by law, there being no absolute right on the part of any one to inherit from another, and all inheritance being the result of a statute, or "law." In the second place, the words "heirs at law" are certainly "words of similar import" to the word "heirs" and the words "lawful heirs," and this Code section does by its terms, apply to "limitations over to . . 'heirs' . . 'lawful heirs' . . or *words of similar import.*" From this it would seem clear that the devises here under consideration meant neither more nor less than that the property should ultimately go to the "children" of Ben L. Lane, and if he had no children, then there would be an intestacy as to that part of the testator's estate embraced in the trust for benefit of Ben L. Lane for life, there being no other provision in the will for the disposition of that part of the estate. Aside from the foregoing, a limitation over to the "heirs at law" of a person has been held by this court to be a limitation over to "his children." In *Milner* v. *Gay,* 145 Ga. 858 (2) (90 S. E. 65), an estate was conveyed to John C. Gay for life, and at his death to be equally divided between his "heirs at law." The court held that under this section (85-504) the deed under consideration created a life-estate in John C. Gay, with remainder to his children, treating words exactly the same as those now dealt with as being "words of similar import." While this was not a full-bench decision, we find that in *Lumpkin* v. *Patterson,* 170 Ga. 94, 107 (152 S. E. 448), the court by a full bench stated that the *Milner* case was well considered, and approved the holding there made, also pointing out that *"Milner* v. *Gay,* was cited approvingly on the proposition that the words 'heirs of the body,' or words of similar import, shall be held to mean 'children,' whether the parent be 'alive or dead.'" The expression used in the *Patterson* case and given the meaning of children was "legal heirs." In *Nunnally* v. *Foster,* 149 Ga. 266 (3), 274 (100 S. E. 1), the court also considered the meaning of the expression "heirs at law" as used in connection with a limitation over, and stated: "In item five of the codicil the home of the testatrix is given to

her brother, G. A. Nunnally, for life, 'and at his death to be sold and equally divided between Alonzo H. Nunnally's heirs at law, and J. W. Nunnally, Mell Nunnally, and Mrs. Sarah Harrison.' The judge held that upon the death of the life-tenant, the proceeds of a sale of the home vested in the six children of Alonzo H. Nunnally and the three persons named, each taking a one-ninth undivided interest therein, the words 'heirs at law' being construed to mean 'children,' thus excluding the widow of Alonzo H. Nunnally. Error is assigned upon this ruling, because, as contended by the plaintiffs in error, the words 'heirs at law' of Alonzo H. Nunnally, who died intestate, leaving a widow and six children and owning an estate of personalty only, included the widow, and that she is entitled to an equal share in the proceeds of the sale with his children and the other legatees in remainder. We can not concede the soundness of this contention, and agree to the holding of the judge in excluding the widow from participating in the proceeds of the sale of the home." See also *Knowles* v. *Knowles*, 132 *Ga.* 806 (65 S. E. 128); *Rogers* v. *Smith*, 145 *Ga.* 234 (88 S. E. 963); *Evans* v. *Edenfield*, 170 *Ga.* 805 (154 S. E. 257); *Waters* v. *Donaldson*, 184 *Ga.* 450 (191 S. E. 429). "Under a deed from a father conveying real property to his daughter 'for and during her natural life, and at her death to her heirs,' the word 'heirs' is to be construed as meaning children." *Beasley* v. *Calhoun*, 178 *Ga.* 613 (173 S. E. 849). We see no escape from the proposition, as held in the foregoing cases, that the words "heirs at law" must be treated as "words of similar import" to those mentioned in the Code, § 85-504, and must so hold in this case unless, as contended, good reason is shown to the contrary.

The plaintiff in error cites *Cooper* v. *Harkness*, supra, as authority for holding contrary to what has here been stated. We can not sustain this contention, for the reason that the holding in *Cooper* v. *Harkness* was merely that the words "heirs at law" *as there used* were not contained in a "limitation over" as contemplated by the Code, § 85-504; this for the reason that the will there construed gave no life-estate or other interest to Charles G. Cooper to be enjoyed by him before the estate was given to his "heirs at law," but on the contrary the estate was given directly to the "heirs at law" of Charles G. Cooper, as substituted devisees, in case Charles G. Cooper died before the vesting of the estate. The facts

are just the opposite here. Ben L. Lane was given the use of the property for and during his life, before it could be enjoyed by his "heirs at law," and therefore, in the case at bar, the will did create a "limitation over" as mentioned in the Code, § 85-504. So also in *Maclean* v. *Williams,* 116 *Ga.* 257 (42 S. E. 485, 59 L. R. A. 125), the "heirs at law" were direct takers; no prior estate was "carved out;" and it was held that as to such expression as *there used,* when "unaccompanied by any qualifying or explanatory language, there is but one place to which resort must be had to ascertain what persons are within the meaning of this descriptive term, and that is the statute of distribution," but it was further stated: "The will of a testator is the law which controls the question as to who shall take the property of the decedent; and this law, if clearly manifested by the terms of the will, will be allowed to prevail over the provisions of the statute of distributions, both as to what persons shall take the property and as to the interest which they will take therein, if there is nothing in the provisions of the will which contravenes the general policy of the State. The intention of the testator is to absolutely control."

But able counsel for plaintiff in error insist that the testator's intention was that the property given to Ben L. Lane during his life was to go to the wife of Ben L. Lane, because the testator realized that his son, Ben L. Lane, was not a good business man, and so sought to create a spendthrift trust for that son; that it was apparent to the testator that should Ben L. Lane ever marry, there was a possibility of his dying and leaving a widow unprovided for; and that it would be but natural that the testator "would want the woman that was to bear his son's name and his name to have a support out of the property which he had given to his son." We do not find such an intention manifested. In the first place, his intention *was* expressed in a proper legal way in an instrument skillfully drawn; and we have no right to arrive at his intention by any means other than by considering the words which the testator used in the will, and in doing so we must give effect to such words as the law requires. "The intention of a testator, if legal, governs the construction of his will, and is to be ascertained from the words thereof. If he uses words which clearly create one estate though he designed another, his intention must yield to the rules of law." *Hertz* v. *Abrahams,* supra. But aside from that, the terms indi-

cate very clearly a general scheme on the part of the testator that his property should go to those of his own blood, and that it should not go to outsiders. For instance, even in paragraph 1(b) of his will, which provides for a fee-simple estate to be delivered to the four children who, as the testator thought, needed no trust to protect their interest, he distinctly stated that that property should go to those four children "or the *lineal* heirs of any of said children who may not be in life at that time, the lineal heirs of any deceased child to take only the share that would have gone to their deceased parent, and in accordance with the laws of inheritance." It thus appears that the testator in each of these four cases excluded the spouse of any of his children from participating in any way in his estate, and on the contrary provided that if any of his children should be dead at the time of division, only that child's "lineal heirs" should take the property. Certainly, in the absence of any clear expression to the contrary, it is difficult to believe that the testator had a contrary intention with reference to his other two children for whom it is claimed he created spendthrift trusts, when he distinctly provided that, so far as the other four children were concerned, their spouses should be excluded from the benefits of his estate. We can not sustain the contention of the plaintiff in error to the effect that the testator showed a different intention by the language in paragraph (c) of the will, to the effect that at the death of each of the two sons for whom it is contended a spendthrift trust was created, the "corpus of such share shall go in fee simple and be delivered to his heirs at law." In the first place, the word "corpus" had to be used there, in order to distinguish between the income from that share of the estate, on the one hand, and the body of the property embraced in that share, on the other hand; and there was no need for such a distinction to be drawn in paragraph 1(c) of the will, where no trust was created for the four children who were considered by the testator capable of handling their own affairs. In the second place, the words to the effect that said corpus "shall go in fee simple and be delivered to his heirs at law," used in said paragraph (c), are practically the same as the words used in said paragraph (b), to wit: that the shares there mentioned "shall go in fee simple and be delivered" by the trustee to each of the children there mentioned, or the "lineal heirs of any of said children who may not be in life at that

838

time." See in this connection *Thomas* v. *Crawford, 57 Ga.* 211. where in a similar situation it was said, ". . and the legal title to the corpus of the estate remains in the trustee to keep the corpus secure for the contingent remaindermen, to ascertain who they would be, and to divide the estate among them when they were ascertained, on the happenings of the contingencies contemplated by the testatrix."

Lastly, it is contended by counsel for the plaintiff in error that if the will be given the construction which we have arrived at, the result will be an intestacy as to that part of the estate of the testator, and the law raises a strong presumption against an intention of intestacy as to any part of the estate, where the testator has actually made a will. We recognize the presumption thus referred to, and take full notice of the authorities cited to support it; but it will be noted that in paragraph 1(b) of this will, leaving by far the greater part of the estate to his other children, there was the same possibility of an intestacy relating to that portion of the estate. For in paragraph (b) the will gives an equal share of his estate to each of said children "or the lineal heirs of any of said children who may not be in life at that time," and if there should be no "lineal heirs" of such children in existence at the time of the death of the testator's widow, it is clear that there would be an intestacy as to that portion of the estate also; there being no provision in the will for cross-remainders in favor of any of the other children, and the will not having otherwise disposed of such shares.

As we construe the will, it appears that the testator did not know whether his son, Ben L. Lane, would ever marry and have children or not—that son being unmarried at the time the will was drawn; and it seems clear to us that the testator intended that in case Ben L. Lane should die without having married, the share of the estate left to Ben L. Lane in trust should go to Ben L. Lane's "heirs at law," who would, in his then status, be the brothers and sisters of Ben L. Lane, after his mother died; and that the testator further intended that in case Ben L. Lane should marry and leave children surviving him, such children should take the remainder interest in the part of the estate given Ben L. Lane for life; but he further intended that if Ben L. Lane should marry, and have no children, still his spouse should be excluded from the benefits

of the testator's estate, just as the spouses of the other four children mentioned in paragraph (b) were excluded from the benefits of the estate; and he further intended, if intent can be inferred from failure to act, that in the latter case, there should be an intestacy as to the part of the estate given to Ben L. Lane for life, just as there would be an intestacy as to any part of the estate given to each of the other children, in case they had died leaving no "lineal heirs," and thus that part of the testator's property would go to *his* legal heirs, and thus no one could be a beneficiary of it, except it be one of his own blood; and this is in substance what the trial judge held.

*Judgment affirmed. All the Justices concur, except Jenkins, J., disqualified.*

BELL, Presiding Justice, concurring specially. Without committing myself as to the applicability of the Code, § 85-504, for the purpose of construing an item of a will such as the item here involved, I concur in the decision on the ground that it reaches the right conclusion as to the actual intention of the testator, under the rule of construction stated in section 113-806, irrespective of section 85-504.