HARROLD, JOHNSON & COMPANY vs. WESTBROOK, agent.

A marriage settlement, made in 1857, provided, in brief, as follows: The separate estate of the wife should so remain, and not vest in the husband or be subject to his debts or control; the title should vest in a trustee for the sole and separate use of the wife; in the event of her death before that of the husband, one-half of the estate was to vest in a son born to her of a former marriage and such other child or children as might be born of the contemplated marriage and be living at her death, share and share alike. If she died leaving no child, the half of the estate was to go to and vest in her next of kin; the other half of the estate, upon her death, was to vest in her husband for life, and at his death was to vest in his son by the former marriage and such child or children as might be born of the contemplated marriage and be living at the death of the husband. In the event that there should be no child of either marriage living at the death of her husband, the half of the estate held by him for life was to vest in the wife's next of kin. If the husband should die before the wife, the whole estate was to vest in her. Provision was made for sales and reinvestment, and as to other property which might come to the wife pending coverture:

*Held*, that the marriage settlement created a life estate in the wife, with remainder over; and when, by virtue of the act of 1866, she became *sui juris*, there being no necessity for a trustee to protect her against the marital rights of her husband, the trust ceased, and she could sell or mortgage her interest in the property and create a valid lien thereon; and where, in 1868, the husband and wife executed a mortgage on realty included in the marriage settlement, to secure the payment of a promissory note made by

them, the trustee at that time being dead, it created a valid lien on the property as to the interest of the wife therein, and upon a foreclosure and sale thereunder, conveyed all the rights and interest of the wife in the property to the purchaser, and the latter held such title unaffected by a judgment subsequently obtained against the wife and her trustee.

February 8, 1887.

Husband and Wife. Trusts and Trustees. Levy and Sale. Title. Judgments. Before Judge SIMMONS. Sumter Superior Court. . October Adjourned Term, 1885.

Reported in the decision.

N. A. SMITH; E. A. HAWKINS, for plaintiffs in error.

J. A. ANSLEY; GUERRY & SON, for defendant.

BLANDFORD, Justice.

On the second of December, 1857, Charles S. Darley and Martha Ann Elizabeth Walters, in contemplation of marriage, entered into the following agreement or marriage settlement:

" STATE OF GEORGIA,—SUMTER COUNTY.

"This indenture of three parts, made and entered into this second day of December, in the year of our Lord eighteen hundred and fifty-seven, between Charles S. Darley, of said State and county, of the first part, Martha Ann Elizabeth Walters, of said State and county, of the second part, and Joab W. C. Horne, of said county and State aforesaid, of the third part, witnesseth that the said Charles S. Darley, of the first part, for and in consideration of a marriage to be had and solemnized between him, the said Charles S. Darley, of the first, the said Martha Ann Elizabeth Walters, of the second part, does, for himself, his heirs, executors, administrators, covenant, grant and agree that all that estate, both real and personal, negro slaves, lands, debts, demands and choses in action of every description whatsoever, to which the said Martha Ann Elizabeth Walters may be in anywise entitled unto upon the death of her late husband, Jesse W. M. Walters, deceased, to which the said Martha Ann Elizabeth Walters, of the second part, widow and relict of Jesse W. M. Walters, deceased, was entitled unto upon the demise

of the said Jesse W. M. Walters, either in law or equity, shall form and remain to be separate property and estate, and shall not, in law or equity, be subject to the payment of the debts of the said party of the first part, or be subject to be sold or conveyed or in any manner controlled by him, the said party of the first part; but the right and title of said property, both real and personal, and choses in action, shall be vested in the party of the (3rd) third part, for the sole and separate use and benefit of the said party of the second part; and the said parties of the first and second part do hereby covenant and agree that the said party of the third part shall be vested with and hold said property, both real and personal, as hereinbefore described, under the following provisions, limitations and restrictions, as a trustee; and the said parties of the first and second part do hereby agree that, having full faith and confidence in the prudence and fidelity of the said party of the third part, that he shall not be required at any time to give bond and security for the faithful performance of the duties of his trusteeship; and the said party of the third part, as trustee as aforesaid, shall, at all times, have full power to sell or dispose of any part or portion or all of said estate, both real and personal, with the consent first had and obtained of the said parties of the first and second parts; and the said parties of the first and second parts do further covenant and agree, that if the said party of the third part should at any time make sale of any property as hereinbefore contemplated, that he, as such trustee, with the consent of the said parties of the first and second parts first had and obtained, shall have power, authority and liberty to invest the proceeds in such other property, real or personal, as he may think proper for the mutual benefit of the first and second parties during the contemplated coverture; and it is further covenanted and agreed by the said parties of the first and second parts, that the said party of the third part, as trustee as aforesaid, shall, during the contemplated coverture of the first and second parties, hold the estate, both real and personal, for the use and benefit of the said parties of the first part and second part; and it is further covenanted and agreed by the said parties of the first and second parts, that if the said Martha Ann Elizabeth Walters, party of the second part, should die during the contemplated coverture with the said Charles S. Darley, party of the first part, leaving the said Charles S. Darley surviving her, the said party of the second part, then and in that event, the one-half of that estate of which it may then consist, both real and personal, of which the said Martha Ann Elizabeth Walters, party of the second part, may be now entitled unto from the estate of her deceased husband, Jesse W. M. Walters, shall go to and vest, immediately after the death of the said party of the second part, to her son, John E. P. Walters, child of her former marriage with Jesse W. M. Walters, and such other child or children of the said contemplated marriage as may be living at the death of the

party of the second part, share and share alike, equal with my said son, John E. P. Walters, of my former marriage, but in case the said Martha Ann Elizabeth Walters, party of the second part, should die, leaving no child or children of her former or present contemplated marriage, then and and in that case, the said one-half of the aforesaid estate shall go to and vest, absolutely and immediately after the death of the said party of the second part, to her next of kin; and it is further covenanted and agreed, that the other remaining one-half of all that estate aforesaid which the said Martha Ann Elizabeth Walters shall in anywise be entitled unto from the estate of her former husband, Jesse W. M. Walters, shall go to and vest a life estate only in the said Charles S. Darley, party of the first part, and after the death of the said Charles S. Darley, of the first part, to go and vest absolutely to my son, John E. P. Walters, of my former marriage, together with such other child or children born of the contemplated marriage as may be living at the death of the said Charles S. Darley, party of the first part, but in case there should be no child or children of my former or my present contemplated marriage living at the death of the said Charles S. Darley, party of the first part, then and in that case, the said life estate, of whatever it may consist, shall go to and vest in the next of kin of the party of the second part.

" And it is further covenanted and agreed with and between the parties of the first and second part, that all the property or estate, both real and personal, debts, contracts or demands, and choses in action of every description, whatever, which may be given said Martha Ann Elizabeth Walters by her father or any other person or persons, by will or otherwise, or be inherited by her from her father's estate or the estate of any other person or persons whatsoever, shall form and remain to be her separate property and estate, and shall not, in law or equity, be subject to the payment of the debts of the said Charles S. Darley, of the first part, or be subject to be sold or conveyed or in any manner controlled by him, the said Charles S. Darley, of the first part, but the right and title thereof shall be vested in her said trustee for the sole use and benefit of the said party of the second part, and at the death of the said Martha Ann Elizabeth Walters, of the second part, the last aforesaid property or estate, of whatsoever it may consist, shall descend and go to and vest in any child or children of the said Martha Ann Elizabeth Walters, of the second part, that may be living at the death of the said party of the second part, share and share alike, but in case the said Martha Ann Elizabeth, party of the second part, should die, leaving no child or children, then and and in that event, said property or estate shall go and vest absolutely and immediately after the death of the said Martha Ann Elizabeth Walters to her next of kin; and it is hereby covenanted and agreed that the said party of the second part shall have full power, with the consent and approbation of her trustee, to

will all or any part of said estate to whomsoever the said party of the second part may think proper, or dispose of the same by a contract, deed or otherwise.

" And it is further covenanted and agreed by and between the said parties of the first and second part, that if the said party of the first part should die, then and and in that event, the whole of said estate, both real and personal, shall go to and become the property of the said party of the second part. And it is further covenanted and agreed between the said parties of the first and second parts, that the said party of the third part shall not be compelled or required at any time to make returns of his actings and doings in regard to said estate or estates, money or property, to any court of ordinary or other tribunal whatsoever.

" And it is hereby covenanted and agreed by the said party of the third part, to and with the said parties of the first and second part, that the said party of the third part consents and agrees to this said nomination and appointment of trustee as aforesaid.

" In testimony whereof, the parties of the first, second and third parts have hereunto set their hands and affixed their seals, the day and year first above written.

C. S. DARLEY, [Seal]

MARTHA A. E. WALTERS, [Seal]

J. W. C. HORNE, [Seal]

" Signed, sealed and delivered in the presence of

W. J. MOORE; A. J. WILLIAMS, J. I. C.

"Recorded 30th January, 1858."

Harrold, Johnson & Co. sued the trustee and Mrs. Ann Elizabeth Darley after the coverture, and obtained a judgment against them at law for and on account of certain goods furnished them for the benefit of the trust estate, upon which judgment execution issued and was levied upon certain lands, as the trust estate, which were claimed by J. M. R. Westbrook, agent for E. C. Duncan. Upon the trial of the claim case, the claimant introduced a sheriff's deed to said lands to E. C. Duncan, made under and by virtue of a certain mortgage execution, which was issued upon a judgment of foreclosure of a certain mortgage in favor of Parker and Raiford for the use of J. M. R. Westbrook, guardian of Edgar C. Duncan, transferee of the mortgage. This mortgage was as follows:

" GEORGIA,—SUMTER COUNTY.

"This indenture, made and entered into this 6th day of April,

eighteen hundred and sixty-eight, between Charles S. Darley and his wife, Martha Ann E. Darley, on the one part, and A. B. Raiford and Leonard Parker, as guardians of Elizabeth, Nancy, Robert, Laura, Virgil and Alexander Duncan, minors of William P. Duncan, deceased, on the other part, all of said county, witnesseth that the said Charles and Martha E. hath this day made and delivered unto the said Raiford and Parker, guardians as aforesaid, their certain promissory note for eight hundred dollars, bearing even date with this instrument, and due on the 25th day of December next, the same being money loaned by the said Raiford and Parker to the said Darley and wife, for the interest of their family and to assist the said Darley to the better advancement and carrying on of his farming interest.

" Now for and in consideration of the sum of ten dollars to them in hand paid, and receipt thereof is hereby acknowledged, and for the better securing of the payment of the aforesaid promissory note, the said Darley and wife hath granted, bargained and sold, and doth by these presents grant, bargain and sell, unto the said Raiford and Parker, as guardians as aforesaid, four hundred acres of land in the 28th district of said county, numbers not now recollected, but known as the place whereon the said Darley and wife now reside, being the whole of said place, together with all the members, appurtenances thereunto in anywise attached and belonging, together with 3 head of horses, 2 mules, 15 cattle and 45 hogs ; to have and to hold the said bargained premises and personal property heretofore described unto the said Raiford and Parker, as guardians as aforesaid, their heirs and assigns, in fee simple forever.

" The said bargained premises and other personal property heretofore described, the said Darley and wife unto the said Raiford and Parker, as guardians aforesaid, will warrant and forever defend against the claims of all persons whatever.

" Now should the said Darley and wife well and truly pay or cause to be paid unto the said Raiford and Parker, as guardians as aforesaid, the aforesaid note, according to the tenor and effect of the same, then this indenture, as well as said note, to be void and of no effect.

" In testimony whereof we have hereunto set our hands and affixed our seal the day and year aforesaid. Signed, sealed and delivered in the presence of us.

" And the said Darley and wife do further agree and bind themselves that no homestead or stay law now in force, or which may hereafter become of force, shall operate against the lien herein created.

M. E. DARLEY,    [Seal]

C. S. DARLEY,    [Seal]

" Signed, sealed and delivered in the presence of

J. W. FURLOW ; JOSEPH A. ANSLEY, Judge C. C.

"Mortgage from Darley and wife to Raiford and Parker, guardians. Recorded, October 29th, 1870."

It was admitted that the lands in controversy were the property of Mrs. J. W. M. Walters at the time of her marriage to Charles S. Darley, and were embraced in the marriage settlement aforesaid, and that Darley and his wife remained in possession of said lands.

Under the facts, which were not controverted, the court stated : " I shall charge the jury that, if they believe from the evidence in this case that Darley and Mrs. Darley gave this note and executed this mortgage for the purpose of securing supplies to maintain their family and run the plantation, and at that time there was no trustee of this estate, that it was a good mortgage, and whether it was made to secure the joint note of the husband or not, that you cannot take advantage of it; that that is a personal privilege belonging to her (or to remaindermen perhaps—I won't decide that) ; and that if that property was sold under that mortgage *fi. fa.*, and Ansley bought it and subsequently sold it to Edgar Duncan, he has got a good title, and it would prevail over your judgment if that was all made before your judgment was obtained."

The judgment of Harrold, Johnson & Co. was obtained long after the mortgage executed by Darley and his wife which was put in evidence in this case. When the court announced what he would charge the jury, a verdict was rendered in accordance therewith by the jury; and this ruling and decision of the court is excepted to, and error thereon is assigned to this court.

We are of opinion that, under the decisions of this court (in the case of *Kile, trustee, vs. Fleming*, 78 *Ga.* 1 ; 61 *Ga.* 171 ; 67 *Ga.* 502 ; 69 *Ga.* 330 ; 73 *Ga.* 209 ; *Mathews vs. Paradise*, 74 *Ga.* 523), the marriage settlement between Darley and his wife created a life estate in the property in Mrs. Darley, and that by virtue of the act of 1866, known as the " woman's law," she became *sui juris* as to this property, and that the trust ceased upon the passage of that act, there being no necessity for a trustee to protect her against the marital rights of her husband, and that, as to

such separate estate, she might sell or mortgage the same, and that the mortgage which she and her husband made to Parker and Raiford, before the judgment of Harrold, Johnson & Co., to this land, to secure the payment of a promissory note which the wife and husband owed Parker and Raiford, the trustee at that time being dead, was a valid mortgage, and created a valid lien on the property as to the interest of Mrs. Darley therein; and that the foreclosure and sale of the property under such mortgage and the purchase by Johnson, conveyed all the rights and interest which Mrs. Darley had in the property to the purchaser; and this having been done before judgment obtained by Harrold, Johnson & Co., the purchaser had the title thereto divested of any lien thereon by reason of the judgment of Harrold, Johnson & Co. So we think that the decision of the court below, under the facts of this case, was right, and the judgment is affirmed.