CASE 98—PETITION EQUITY—NOVEMBER 1.

## Avery's Trustee v. Avery.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. CONTRACTS BETWEEN A TRUSTEE AND THE BENEFICIARY as to the trust property, if to the advantage of the trustee, are constructively fraudulent, and will not be enforced against the will of the beneficiary.

    A deed entered into between trustees and the beneficiary, by which the powers of the trustees were enlarged and they were to have, in certain contingencies, a beneficial interest in the trust estate, is set aside in this case at the instance of the beneficiary.

2. RENUNCIATION OF TRUST—EXERCISE OF DISCRETION BY TRUSTEES.— A deed between trustees and the beneficiary being void for constructive fraud, all the parties are remitted to the trusts existing prior to the execution of the deed; and although the deed contains a renunciation of the trust by the trustees, yet as it is clear that that renunciation was merely for the purpose of enabling their successors under the deed to act, it can not be regarded as an exercise of the discretion conferred upon them by a clause in the will which provides that the trust shall cease when the beneficiary arrives at a certain age, provided that in the judgment of the trustees the habits of the beneficiary are such as to render it prudent that the trust shall cease.

3. DISCRETION OF TRUSTEES AS TO WHETHER TRUST SHALL CEASE.— The beneficiary having arrived at the age indicated in the will, the trustees are invested with a reasonable discretion as to whether the trust shall cease and the trust estate be given into the possession of the beneficiary, but the test provided by the testator must determine the question. Therefore, in this action by the beneficiary against the trustees to recover possession of the trust estate the chancellor should inquire and determine whether the habits of the beneficiary "are such as to render it prudent that the trust shall cease."

4. CEASING OF REASON FOR CREATION OF TRUST.—Where one conveys his estate to another to be held in trust for him, a court of equity has the power to give him the control of the property when the reason which led to the creation of the trust no longer exists.

P. B. MUIR FOR APPELLANT.

1. The deed of 1882 was *prima facie* valid, and should not have been canceled without proof. A deed from child to parent is not presumptively fraudulent. (McHarry v. Irvine's Ex'rs, 85 Ky , 346; Jenkins .v. Page, 12 Peters, 241; Perry on Trusts, sec. 201; Story's Eq. Juris., sec. 309.)

2. The deed of 1887, though not *prima facie* valid, might have been vindicated by proof, and it was error to deny to appellants the right to do so. A trustee and *cestui que trust* may make a valid contract with reference to the trust property. The burden of showing perfect fairness is devolved upon the trustee. (Perry on Trusts, sec. 194; Hare's American Notes, 2 Leading Cases in Equity, part 2, top page 1228.)

3. Even if the deed of 1887 was necessarily invalid, and, therefore, incapable of vindication, the only result would be to remit all parties to the trusts created by the will of B. F. Avery and the deed of 1882.

4. A judgment ordering the trustees to turn over to the *cestui que trust* all the trust estate without an account, and before the payment of debts secured by the deeds, was manifestly unjust and erroneous.

DODD & DODD ON SAME SIDE.

1. Contracts between parent and children are *prima facie* valid, and it is always necessary to prove some improper and undue influence in order to set aside such contracts. (McHarry v. Irvine's Ex'r, 85 Ky., 346; Perry on Trusts, vol. 1, sec. 201; Story's Eq. Jur., vol. 1, sec. 309; Jenkins v. Page, 12 Peters. 252.)

2. The deeds can not be set aside until the creditors are satisfied. Although some of the objects for which a trust is created are invalid, the legal title vests in the trustees during the continuance of the *valid* objects of the trust, except in those cases where the valid objects of the trust are so mixed up with those which are void that it is impossible to sustain the one without giving effect to the other. (Hurley v. James, 5 Paige, 320.)

In this case the trust for the benefit of creditors is not so mixed up with the others as to be incapable of separation. (Keys v. Carleton, 141 Mass., 51 ; Henderson v. Stein, 47 Mich., 267.)

3. A trust created from necessity or for a special purpose will cease with the necessity which gave rise to it, but not otherwise. (1 Perry on Trusts, secs. 274, 350 and 353; Cromie v. Bull, 81 Ky., 652; Flournoy v. Johnson, 7 B. M., 694; Thomas v. Harkness, 13 Bush, 29.)

Avery's Trustee v. Avery.

HARGIS & EASTIN FOR APPELLEE.

1. All transactions are fraudulent *per se* where the relation of trustee and *cestui que trust* exists, and the trustee procures a benefit to himself and a detriment to the *cestui que trust*. The law will not allow the trustee to go into the question as to whether his motives were good. (Perry on Trusts, secs. 194, 197; Mitchum's Heirs v. Mitchum's Adm'r, &c., 3 Dana, 260; Jewett v. Miller, 10 N. Y., 402; King v. Remington, 36 Minn., 35; Baldwin v. Allison, 4 Minn., 11; Davone v. Fanning, 2 Johns. Ch'y, p. 252; McGaughey v. Brown, 46 Ark., 25; Wright v. Smith, 23 N. J. Eq., 106; Smith v. Drake, *Ib.*, 302; Cadwallader's Appeal, 64 Pa. St., 293; Renew v. Butler, 30 Ga., 954; Coles v. Trecothick, 9 Ves., 234; Handlin v. Davis, 81 Ky., 34; Nelson v. Hoyoner, 66 Ill, 487; Story's Eq. Jur., vol. 1, sec. 258.)

2. By the deed of 1887 appellants actually exercised the discretion reposed in them by the will.

The discretionary powers under the will of B. F. Avery were not arbitrary, and the appellants were bound to exercise them in good faith, without fraud, and without any benefit to themselves. (Perry on Trusts, vol. 2, secs. 511, 511a; Walker v. Smyser's Ex'r, 80 Ky., 620.)

If a trustee has once exercised or executed a discretionary power he can not take it back or change the results of that exercise (Mason v. Mason, 4 Sauf. Ch'y, p. 631); and so the appellants here, having exercised this discretionary power for their own benefit, can not claim, if they do not get the benefit it is no exercise of the power.

3. Had not the discretion reposed in the appellants under the will been exercised, and the renunciation of the trusts created by the will and the deed of 1882 been made, the law would presume, under the facts and circumstances of this case, the renunciation of the trust and the exercise of the discretion. (Perry on Trusts, vol. 1, secs. 320, 354; Flournoy v. Johnson & Kingly, 7 B. M., 693.)

4. The trustees were guilty of a mismanagement and perversion of the trust to their own benefit, and the purposes of the trust under the will having been accomplished, the trustees having surrendered the trust, and having exercised the discretion as to the habits of appellee, a conveyance of the stock should be decreed in his behalf. (Perry on Trusts, sec. 843; Thomas v. Harkness and Wife, 13 Bush, 30.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

Prior to November 10, 1882, B. F. Avery gave to his son, the appellee, W. S. Avery, one hundred shares of stock in the incorporated company, known as "B. F. Avery & Sons;" and at the date named the donee

conveyed it in trust to his mother, the appellant, Susan
H. Avery, with power of renunciation upon her part,
to be held by her for his use, subject to the rights of
his then creditors. He retained the entire equitable
ownership; and it may fairly be presumed that a desire
upon his part to secure the estate to himself from his
then improvidence, together with his confidence in his
mother, led to the execution of the deed. His father
died in 1885, and under his will, and subject to its
conditions, the appellee acquired enough more of the
stock to make him the owner in all of four hundred
and thirteen and two-sevenths shares. The will pro-
vides:

"The portion of said stock which shall, under the
third item, fall to my son, Sidney, shall be held by
my sons, Samuel L. Avery and George C. Avery, in
trust for the benefit of said Sidney until he shall arrive
at the age of twenty-seven years, when the trust as to
him shall cease, *provided that, in the judgment of my
wife, and my sons, Samuel and George, the habits of
said Sidney are such as to render it prudent that said
trust shall cease, and until that time said Sidney shall
have the use only of the dividends arising upon such
stock.*" If I should die during the minority of said
Sidney, then he shall have during his minority only
such portion of said dividends as may be necessary,
in the judgment of said trustees, for his education and
support, the excess over that of said dividends being
safely invested for his benefit."

In February, 1887, the appellee, being then twenty-
nine years old, conveyed all the stock in trust to the
appellants, they, as his trustees, being already in con-

trol of it.  Another person was joined with them as a co-trustee.  The instrument is quite lengthy.  It recites the already existing trusts, and then enumerates the powers and rights of the trustees and the *cestui que trust*.

It is claimed upon the side of the appellants that it was but a consolidation of the testamentary trust and that created by the deed of 1882 to the mother, while the appellee contends, not only that it is forbidden by law as against public policy, and, therefore, void, but that it operated as a renunciation of the previously existing trusts, and as an exercise by the trustees under the will of the discretion therein confided to them as to the stock given to the appellee. Acting upon this belief, he brought this action, asking that the deed of 1887 be annulled as fraudulent; that the testamentary trust and that under the deed of 1882 be held to have been surrendered, and that he be adjudged the absolute possession of the stock.

The answer traverses, in the main, the averments of the petition; gives a history of the transactions relating to the stock; avers that the habits of the appellee have not improved, but that he is still improvident, and that a prudent regard for his interests forbids that any of the trusts should cease.  The lower court sustained a demurrer to the answer, and gave the appellee the absolute control of the stock.  It did this, as its opinion shows, upon the ground that the deed of 1887 was void, but yet was an exercise of the discretion given by the will to the trustees, and operated as a renunciation of both the testamentary trust and that created by the deed to Mrs. Avery of 1882.

Unquestionably the deed of 1887 lessened the rights
.and interests of the *cestui que trust* as they existed
under the trust deed of 1882 and the will of his father.
The absolute equitable right to the stock was prac-
tically reduced to a life estate.  Indeed, to less, be-
·cause, instead of being entitled to the income arising
from the stock, as he formerly was, it was provided
that he should only have such portion of it as the
.appellants might see proper to give him.  He was also
·divested of the power to dispose of the stock by will
unless he should marry and have children.  This was
likely to work to the pecuniary advantage of the ap-
pellants.  It created for them, in certain contingencies,
an estate in remainder, and there was no consideration
moving to the *cestui que trust* to support a contract
for the benefit of the trustee.  Moreover, their powers
as trustees were increased.  The deed authorized them
to dispose of the stock in any manner they saw fit,
and exempted them from any accounting for their acts
in the management of the trust.  These matters are all
.shown by the answer; and in view of the fact that
this was a contract between those who already occu-
pied the position of trustee and *cestui que trust*, we
·concur with the lower court in holding the deed of
1887 to be void.

If a trustee contracts to his own advantage, as to
the trust property, with the *cestui que trust*, while
the trust relation exists, he can not be allowed to
profit thereby.  The law will not permit him to thus
place his individual interest in conflict with that of
the *cestui que trust*.  (Perry on Trusts, section 197.)
.He can not be permitted to thus tempt his own vir-

tue. Ordinarily he has the confidence of the *cestui que trust*, and influence over him, and occupies such a position that contracts between them as to the trust estate, whereby he profits, should be regarded as contrary to a proper and just policy, and, therefore, not enforceable against the will of the party, who, from his dependent situation, is the weaker one. The policy of the law is against such transactions, and they are, therefore, regarded as constructively fraudulent. They may not originate from any actual evil design, and doubtless did not in this instance; but as they tend to mislead and violate confidence, they are forbidden by law equally with positive frauds, or those originating *malo animo*.

It is urged that the appellants, in the deed of 1887, expressly renounced the two trusts theretofore existing; and if this be not so, yet the fact that the trustees under the will, by the deed of 1887, contracted with him, should be held to be a concession upon their part of his fitness to manage his estate, and should be held to operate as an exercise in his favor of the discretionary power under the will.

It is true that the twelfth clause of the deed of 1887 provides: "Susan H. Avery, of the second part, expressly renounces, for the benefit of the successors named herein, the trusts and the conditions named in the deed of November 10, 1882, and the said Susan H. Avery, Samuel L. Avery and George C. Avery, in exercise of the discretion and trust named in the will of B. F. Avery for the use of said W. S. Avery, now renounce the same for the benefit of the successors named herein;" but it is evident that it was

the purpose of this writing to continue the previous existing trusts, and that it was so understood by all the parties to it. It strengthened them as against the *cestui que trust*, and to the advantage of the trustees, and herein lies the fault of the instrument. A renunciation in this way, the writing containing it being void, should not operate to destroy the previous trusts. The trustee under the deed of 1882 renounces merely to enable the trustees under the new deed to act, and so of the trustees under the will. It is expressly stated as to both trusts that the renunciation is "for the benefit of the successors named herein." It was not made for the benefit of W. S. Avery, but to enable the new trustees to act. In fact, the deed expressly provides against the termination of the testamentary trust, because it says: "Whereas, said parties (the trustees under the will), in the exercise of the discretion given them, do not deem that the time has yet arrived when said trust should cease, although said W. S. Avery has now attained the age of twenty-seven years." Suppose the trustees under the former trusts, looking to their own advantage, had renounced them improperly, would the law allow them to fail? Certainly not. The chancellor, exercising his inherent power, would interfere, and uphold them by providing a trustee.

Here, however, it is claimed that this was done by a deed in which the former trustees evidently intended not to do it. The deed of 1882 was executed by parties who were *sui juris*, and it was unquestionably valid. It, however, was for the benefit of the appellee only, and a court of equity has the power,

therefore, to give him the control of the property embraced by it, if the reason which evidently led to its execution no longer exists. If the habits and circumstances of the *cestui que trust* no longer require the continuation of the trust in order to secure to him the estate conveyed, then as he is the sole beneficiary, the chancellor should restore to him the control of it. As to the testamentary trust, the trustees were not invested with an arbitrary discretion, but they were invested with a discretionary power to be reasonably exercised for the benefit of the appellee. They had no right to exercise it in their own favor, but it was their duty to exercise it for the benefit of the *cestui que trust.* Whether they have done so may be inquired into by the chancellor. The fact that the trustees have contracted with the *cestui que trust*, or that he has capacity to contract, should not be the test whether the testamentary trust should be removed, and the property restored absolutely to the appellee. The one provided by the testator must determine the question, and that is, whether "the habits of said Sidney are such as to render it *prudent* that said trust shall cease."

The deed of 1887 being invalid, all the parties were remitted to the trusts previously existing, and the lower court should have overruled the demurrer to the answer and heard the case upon the merits. If upon such hearing the chancellor should be of the opinion that the necessity, as indicated in B. F. Avery's will, for the continuation of the testamentary trust no longer exists, and that the need as

herein indicated for that created by the deed of 1882 also no longer exists, then he should, by a proper judgment, give to the appellee the control of the property; but if the showing be otherwise, then the trusts should be continued.

Judgment reversed, and cause remanded for further proceedings consistent with this opinion.