## MUNFORD v. PEEPLES et al.

1. Where a testator, by item 5 of his will, bequeathed to his son, R. S. Munford, in trust for the testator's daughter, L. M. Peeples, one half of his shares of the capital stock of a certain mining company (the other half being bequeathed to the son by another item absolutely), vesting the trustee with full and complete control of said stocks, with the exclusive right and authority to vote same at all stockholders' meetings, and to sell the "stock as in his judgment may be best for the interest of all parties concerned;" and where the testator also provided, in a subsequent clause of item 5 of the will, that the trustee shall pay to the daughter " or to the heirs of her body, should she be dead, all dividends that may accrue upon said shares of stock, and the proceeds of any sale that he may make of same, to be hers or theirs, as the case may be, absolutely. But should my said daughter . . die leaving no issue of her body, children, or children of children, before the executing of the trust herein created, then the stock herein bequeathed to my son . . as trustee, or the residue thereof should any have been sold, shall be and become the property of the said [son] absolutely." *Held*, that the daughter takes an estate in fee, which is not cut down to a less estate by item 5 or any subsequent part of the will.

2. Where an estate was bequeathed by a testator to a named trustee for his daughter, as set out in headnote one, and a petition was filed by the daughter against the trustee, alleging that at the time the testator executed his will she was over twenty-one years of age, of sound mind, and had since that time remained of sound mind and fully capable of receiving, owning, controlling, and enjoying property in her own right without the intervention of a trustee, and also alleging malfeasance and nonfeasance on the part of the trustee, and praying for injunction, receiver, and that such devise be declared to convey the absolute fee to her, such petition was not subject to demurrer on the ground that the trust was executory, and not executed; and the court did not err (at a regular term of court) in overruling the demurrer on that ground. And where, on a hearing for temporary injunction, the evidence for the plaintiff was sufficient to sustain the allegations of her petition, the court did not err in granting a temporary injunction.

No. 2193. SEPTEMBER 13, 1921. REHEARING DENIED SEPTEMBER 24, 1921.

Equitable petition.   Before Judge Tarver.   Bartow superior court.   July 12, 1920.

L. S. Munford died, leaving his last will and testament, which was admitted to probate in solemn form, the material portions of which are as follows:

"Item 5.   I hereby give, devise, and bequeath to my son, Robert S. Munford, in trust for my daughter, Lewis Munford Peeples, wife of O. T. Peeples, one half (½) of my shares of the capital stock of the Etowah Development Company, and one half (½) of my shares of the capital stock of the First National Bank of Cartersville, Ga., hereby vesting him, the said Robert S. Munford, with full and complete control of said stocks with the exclusive right and authority to vote same at all stockholders' meetings, and to sell the Etowah stock as in his judgment may be best for the interests of all parties concerned, but the bank stock may be sold at the instance of the said Lewis Munford Peeples, and upon her written request.   Said trustee shall pay to said Lewis Munford Peeples, or to the heirs of her body should she be dead, all dividends that may accrue upon said shares of stock, and the proceeds of any sale that he may make of same, to be hers or theirs, as the case may be, absolutely.   But should my said daughter, Lewis Munford Peeples, die leaving no issue of her body, children, or children of deceased children, before the executing of the trust herein created, then the stock herein bequeathed to my son, Robert S. Munford, as trustee, or the residue thereof should any have been sold, shall be and become the property of the said Robert S. Munford, absolutely.

"Item 6.   I hereby give, devise, and bequeath to my daughter, Lewis Munford Peeples, wife of O. T. Peeples, in trust, for and during her natural life, for the joint use and benefit of herself and children, including the children she now has as well as those that may hereafter be born to her, the following real estate, to wit:   (A) All of my lands lying on and adjacent to Pettitt's Creek in the fifth district of the third section of Bartow County, Georgia, including the following farms, to wit: that certain farm known as my old home place, where I lived for many years; also the farm known as the old Bishop place, the same being sometimes known as the old Rock House place and adjoining the home place aforesaid; also, the farm known as the old Munford

Mill place. (B) Also, that certain farm lying on, or near, Pettitt's Creek in said county, formerly known as the J. G. Lowery place; with all of the live stock, farming tools, and machinery on each of said farms, for use in the operation of such farms, to be treated as part and parcel of such farm and to go with such farm to said devisees in the same way and on the same limitations as the farm itself. (C) Also, that certain storehouse and lot on the South side of Main St. in the City of Cartersville, Ga., now occupied by J. W. Vaughan & Co. (D) Also, that certain storehouse and lot on the South side of Main St., in Cartersville, Ga., now occupied by the Bank of Cartersville. (E) Also, that certain house and lot on the north side of Leake St., in Cartersville, Ga., now occupied by J. C. Fink and adjoining on west the residence lot of Capt. Bob Anderson. (F) Also, that certain town lot, with the two frame buildings thereon, located on the southwest corner of Bartow and Carter Sts. in the City of Cartersville, Ga. It is my will and desire that on the death of my said daughter, Lewis Munford Peeples, all of the real estate mentioned in this item and devised and bequeathed to her, in trust for herself and children during her natural life, shall then vest in, and is hereby devised and bequeathed in fee simple, to the children of my said daughter who may survive her, and to the surviving child or children of any deceased child or children who may have died before their said mother; the child of such deceased child or children to receive the share or interest which would have been received by such deceased child or children, had such deceased child or children have survived my said daughter; the said Lewis Munford Peeples only having the right to use, for the benefit of herself and children, the income arising from the property devised in this item."

"Item 9. In the event of the death of my daughter, Lewis Munford Peeples, leaving surviving her one or more children under twenty-one years of age, or one or more grandchildren who are children of a deceased child of my said daughter, then and in either of such events I hereby appoint my son in law, Oscar T. Peeples, as testamentary guardian of any and all of such minor children or grandchildren, with authority to take charge of and manage and control the property and interests of such minor children or grandchildren of my said daughter, given them under this will, during their minority; but the appointment of said testamen-

tary guardian is conditioned upon his first giving a good and sufficient bond in double the value of the property and effects to come into his hands as such guardian, payable to the ordinary of Bartow County, Georgia, signed as surety by some good and solvent fidelity insurance company doing business in Georgia, in compliance with the laws thereof, and conditioned for the faithful discharge by the said Oscar T. Peeples of all the duties of his office as such guardian; said bond, and the surety thereon, to be approved by the ordinary of Bartow County, Ga. On failure of my said son-in-law to accept said guardianship, or to make and file in the office of the ordinary of Bartow County, Ga., with his approval, the bond required above, within four months after the death of my said daughter, then and in that event his appointment as guardian shall not take effect, and I hereby appoint my son, Robert S. Munford, as testamentary guardian of the minor children and (or) grandchildren, as aforesaid, of my daughter, and no bond shall be required of him as such guardian.

"Item 10. It is my express will and desire, and I hereby positively direct, that none of the property bequeathed and devised to my daughter, Lewis Munford Peeples, in trust for herself and her children, during her natural life, shall at any time for any cause or purpose, or by order of any court upon any pretext, be sold by her for reinvestment or any other purpose; but only the annual income may be disposed of by her, and the same prohibition and restriction is hereby placed on the power of the testamentary guardian of the minor children and (or) grandchildren of my said daughter, should any there be; the intention of this will and testament being, that the property I have devised and bequeathed for the benefit of my said daughter and her children, and the children of her deceased children dying before her, shall remain intact during her lifetime and during the term of said guardianship, if any there should be. I positively forbid and prohibit any encroachment whatever on the corpus of said bequest and devise, until the trust herein and hereby created is fully executed."

After the testator's death, and the probate of his will, the trustee named voted the shares of stock in the Etowah Development Company, and exercised exclusive control over the shares bequeathed to Mrs. Lewis Munford Peeples, until the filing of the

present suit. Mrs. Peeples and others filed an equitable petition against Robert S. Munford as trustee, individually and as executor, and against Etowah Development Co., alleging that she was over twenty-one years of age, was of sound mind, was sui juris and laboring under no legal disability, and was fully capable of receiving, owning, controlling, and enjoying property in her own right without the intervention of a trustee; alleging also various acts of mismanagement, malfeasance, and nonfeasance against Robert S. Munford as trustee, etc.; and praying that the will be construed, especially the fifth item thereof; that the trust created therein be declared an executed trust and invalid; that the ownership of the shares of stock be declared not subject to defeasance in the event of Mrs. Peeples's death at any time after the death of the testator; that the trustee be required to transfer and assign the shares of stock, held by him as trustee, to Mrs. Peeples on her election to take the same in satisfaction of her legacy without a sale, etc.; that R. S. Munford, individually and as executor of L. S. Munford, and as trustee, be enjoined from selling or attempting to sell any portion of the stock without special order of the court, etc.; and that, until the removal of Munford as trustee, a receiver be appointed to manage and control the shares of stock; and for general relief, etc. The defendant demurred and answered. The plaintiff amended her petition, which was demurred to, and the demurrers were overruled; to which judgment the defendant excepted. On the interlocutory hearing the restraining order was continued of force pending the further order of the court, provided the plaintiff, Mrs. Peeples, would execute a bond in the sum of $100,000, conditioned to pay the Etowah Development Co. damages in the event it is held on final hearing that the right to vote the stock in controversy was in Robert S. Munford at the time of filing the suit, and that he was not subject to removal, etc. In the event plaintiff failed to make the bond the temporary restraining order was to be dissolved, provided the defendant, Munford, executed a like bond in the sum of $100,000, etc. To this judgment Munford excepted.

*G. H. Aubrey* and *J. T. Norris,* for plaintiff in error.

*Neel & Neel,* contra.

HILL, J. (After stating the foregoing facts.)

1. The first question to be considered is, what estate did Mrs.

Peeples take in the stock bequeathed by the fifth item of testator's will? Did she take a life-estate only; or did she take an *absolute,* or *defeasible* fee? Considering first the language of item 5 alone, it will be observed that R. S. Munford was created trustee for testator's daughter, Lewis Munford Peeples, *alone.* The trustee is not expressly declared trustee for any one else, in this item of the will. It confers on the named trustee " full and complete control " of the stock, with the exclusive right and authority to vote it at all stockholders' meetings, and to sell it " as in his judgment may be best for the interests of all concerned," etc. This item also provides that the *bank* stock may be sold at the instance of the cestui que trust and upon her written request, which was done, and the bequest as to that stock is not under consideration here. The trustee is directed, in item 5, to pay to Mrs. Peeples, " or to the heirs of her body should she be dead, all dividends that may accrue upon said shares of stock, and the proceeds of any sale that he may make of same, to be hers or theirs, as the case may be, absolutely." It is further provided that should testator's daughter, Mrs. Peeples, " die leaving no issue of her body, children, or children of deceased children, before the executing of the trust herein created, then the stock herein bequeathed to my son, Robert S. Munford, as trustee, or the residue thereof should any have been sold, shall be and become the property of the said Robert S. Munford, absolutely." What estate, then, did Mrs. Peeples take in the property bequeathed under this item of the will? Nowhere in this item does the testator expressly give the stock to his daughter " for life," nor does he use language of similar import. It will be observed in this connection that by item 6 of his will the testator gives, devises, and bequeathes to his daughter, Mrs. Peeples, in trust, " for and during her natural life, for the joint use and benefit of herself and children, including the children she now has, as well as those that may hereafter be born to her," certain lands, city property, and personal property. At the end of this item (6) the testator again alludes to the real estate mentioned in this item, and provides that on the death of his daughter all of the real estate " devised and bequeathed to her, in trust for herself and children *during her natural life,* shall vest in, and is hereby devised and bequeathed in fee simple, to the children of my said daughter who may survive her," etc. In item 10 of the will the

testator again provides that the " property bequeathed and devised to my daughter, Lewis Munford Peeples, in trust for herself and her children, *during her natural life*" (italics ours), shall not " be sold by her for reinvestment or any other purpose." Considering these expressions of limitation *for life* in the items of the will other than item 5, that is, the limitation of the property devised *to the daughter in trust for life,* and considering that there is no such express limitation *for life* in item 5, as to the stock bequeathed, it is convincing to our minds that the testator did not intend that his bequest of the stock in the Etowah Mining Company to his daughter, in item 5 of the will, should be for her life only. In item 5 the stock is given in trust for Mrs. Peeples without limiting it to her life, but it is expressly provided that the trustee has the right to sell the stock as in his judgment may be best for the interest of all parties concerned, and pay the proceeds thereof to her or them as the case may be, absolutely. It is true that the testator directs the trustee to pay the cestui que trust, Mrs. Peeples, or to the heirs of her body should she be dead, all dividends that may accrue upon the shares of stock, etc., but we do not think that this language will cut down the original gift, even if this refers to the mining stock (which we construe to be an absolute fee), to a life-estate, or to a base or defeasible fee.

The general rule is that courts will not by construction reduce an estate once devised absolutely in fee, by limitations contained in subsequent parts of the will, unless the intention to limit the devise is clearly and unmistakably manifest. *Smith* v. *Slade,* 151 *Ga.* 176 (106 S. E. 106), and cases cited; *Wilcher* v. *Walker,* 144 *Ga.* 526, 529 (87 S. E. 671). We are of the opinion that the intention of the testator to limit the devise to his daughter to a life-estate is not clearly and unmistakably manifest in his will. The bequest in item 5 is to R. S. Munford, as trustee for Mrs. Peeples, of the Etowah Development Co. stock, and to no other person. The language of the testator as expressed in the first part of this item was sufficient to vest in Mrs. Peeples the fee to the mining stock. The question arises, does the subsequent language directing the trustee to pay Mrs. Peeples, " or to the heirs of her body should she be dead," the dividends accruing on the stock, and the proceeds of the sale thereof, to be hers or theirs absolutely, cut down the estate from an absolute fee to a lesser estate?

We do not think so. Certainly not in the absence of some clause clearly limiting the interest of Mrs. Peeples to less than a fee. It is true that under § 3660 of the Civil Code of 1910, limitations over to "heirs," "heirs of the body," "lineal heirs," "lawful heirs," "issue," or words of like import, shall be held to mean children, whether the parents be alive or dead; and under such words, children and the descendents of deceased children, by representation, in being at the time of the vesting of the estate, shall take an estate in remainder. But in such case there must be a previous life-estate in the parent. But here the testator has not expressly bequeathed the stock in trust for Mrs. Peeples for and during her natural life, and at her death the remainder to her children. Had he done so, undoubtedly Mrs. Peeples would have taken only a life-estate, and on her death, leaving children surviving her, they would take the stock as remaindermen. But such is not the case. And this conclusion is borne out by the use of the language of the testator in other items of the will, with reference to other and different property devised, where the language creating a life-estate in Mrs. Peeples, with remainder over, is clear and unmistakable. It would have been as easy for the testator, by item 5, to create a life-estate in Mrs. Peeples in the mining stock, with remainder over, if he had so intended, as he did so clearly in items 6 and 10 of the will, where he expressly created a life-estate in Mrs. Peeples as trustee, with remainder over to her children, etc. See *Craig* v. *Ambrose*, 80 *Ga.* 134, 136, 137 (4 S. E. 1), where the devise was to a certain woman and "her bodily heirs." It was held that at the death of the testator the fee vested in the woman. "A devise of real estate to 'A or his heirs,' gives to A. an estate in fee, the word 'or' being read 'and.'" Hawkins on Wills, 180. An owner of land executed a deed to certain land to a named woman "and her bodily heirs." "This is to be distinctly understood: that this twenty acres is all that she will get of lot No. 301; also this is not to be sold for any consideration; it is to remain hers and her children, hers and their natural lives." The tenendum clause was to the woman and "her bodily heirs, executors, administrators, and assigns in fee simple." It was held that such deed conveyed a fee simple estate to the woman, by virtue of section 3661 of the Civil Code of 1910. *Slamey* v. *McGinnis*, 145 *Ga.* 226 (88 S. E. 935);

*Ewing* v. *Shropshire,* 80 *Ga.* 374 (7 S. E. 554). As bearing upon the intention of the testator in item 5, in using the words " or heirs of her body," and that these words were not intended to create a remainder over to the children of Mrs. Peeples living at her death, it is to be borne in mind that the testator expressly provided for the children of Mrs. Peeples in item 6 of his will, where he, bequeathed to them an equal share with their mother in the income of certain city property and farms, and at the mother's death the children are given the remainder in fee simple.

Let us consider another view as to the meaning of item 5. It is a well understood rule in this State that the law favors the vesting of estates at the earliest possible time, and " where there are divesting clauses in à will, the law is disposed to give them such effect as to vest the estate indefeasibly at the earliest possible moment. Language doubtful in its meaning should not be construed to lessen the fee previously devised." *Crumley* v. *Scales,* 135 *Ga.* 300, 308 (69 S. E. 531); Civil Code (1910), § 3680. Where a testator in his will bequeathed property to his wife during her natural life, and at her death to be equally divided among all his surviving children and the legal representatives of such as may be deceased, it was held that the words of survivorship had reference to the death of the testator, and not to the death of the tenant for life, and that all the children of testator who were in life at his death took vested remainders under the will, to be enjoyed at the death of the tenant for life. *Vickers* v. *Stone,* 4 *Ga.* 461. For additional cases stating the rule favoring the vesting of certain legacies at testator's death, see: *Mendel* v. *Stein,* 144 *Ga.* 107 (86 S. E. 220); *Crossley* v. *Leslie,* 130 *Ga.* 782 (5), 786, 788 (61 S. E. 851, 14 Ann. Cas. 703); *Clanton* v. *Estes,* 77 *Ga.* 352 (1 S. E. 163); *Legwin* v. *McRee,* 79 *Ga.* 430 (4 S. E. 863); *Fields* v. *Lewis,* 118 *Ga.* 573 (45 S. E. 437); *Wilcher* v. *Walker,* supra. In *Crumley* v. *Scales,* supra, the testator had four daughters, all of whom, except one, had chidren at the time the will was executed. The testator devised to the three other daughters specific lots, in language clearly creating in them life-estates and remainders to their children, respectively, upon their deaths. To two of these daughters, in separate items of the will, he gave two other lots " absolutely and in fee simple," and no language was used indicating that the property so given was to

go to any one upon the death of the devisee. To the daughter who had no children he devised a lot for and during her life, and provided: "but if she should leave no child or children, to go to her sisters, . . or their children, in three equal shares." By the 12th item of his will the testator disposed of the residuum of his estate, as follows: "I give, devise, and bequeath, absolutely in fee simple, all the balance of my property which I may own at the time of my death, both real and personal, and wherever located, in equal shares to my four daughters [naming them]. Should any of my said children die leaving child or children, such child or children shall take the share of their deceased parent." It was held that "under the 12th item of the will, all four daughters having survived the testator, each of them was entitled to her respective share therein devised in fee simple, and their children did not, under the will, acquire any interest whatever in the property so devised." It is stated in 2 Alexander on Wills, § 996, as a general rule, that if it appears from the whole will that payment of any legacy was merely for the convenience of the estate, or of the one charged with payment, the beneficiary will take a vested interest at the death of the testator, and the vesting of the estate will not be deferred where payment is directed to be deferred until certain property be sold. The Civil Code (1910), § 3899, provides that "An unconditional gift of the entire income of property, or interest accruing from a fund, will be construed into a gift of the property or fund, unless the provisions of the will require a more limited meaning." In *Swann v. Garrett,* 71 *Ga.* 566, 569, Blandford, J., said: "Where a testator directs that his executors shall sell certain property and divide the proceeds between certain named legatees, it is optional with the legatees to elect to take either the property itself or the money arising from the sale of the same. Such a bequest is as much of the property itself as of the money arising from the sale of the same; to allow the legateee to take property, instead of money arising from the sale, is no violation of the testamentary scheme of the testator; the purpose of testator is, that the legatees, who are the objects of his bounty, shall have his property; and if this can better be accomplished by the legatees taking the property itself, rather than have a sale of the same and taking money arising from such sale, what objection can be raised to this course?"

Citing 1 P. Williams, 130, 389, 471; 1 Roper on Legacies, 547; 2 Jarman on Wills, 188, note; 2 Story's Equity, 1213, 1215; 16 Ala. 489. And see *Smith* v. *Dunwoody,* 19 *Ga.* 256, 257, 258; *Thomas* v. *Owens,* 131 *Ga.* 255 (62 S. E. 218). This doctrine of reconversion, or equitable conversion, is based on the principle that equity will not compel the execution of a trust against the wishes of the person beneficially interested. Corpus Juris lays down the general rule as follows: " In the application of the doctrine of equitable conversion, it is a well-settled rule that if money is directed by a will or other instrument to be laid out in land, or land is directed to be turned into money, the party entitled to the beneficial interest may in either case, if he elects so to do, cause a reconversion of such property and take it in its original state, notwithstanding there is a positive direction to convert the property; and such an election is an affirmative element in the establishment of his right to the property. Such an election, however, can not be made if the rights of others will be injuriously affected thereby." 13 C. J. 885, § 81.

From the foregoing we conclude that the bequest in item 5 of testator's will creates an absolute estate in fee in Mrs. Peeples, and that the subsequent provision in said item that the trustee named " shall pay to said Lewis Munford Peeples, or to the heirs of her body should she be dead, all dividends that may accrue upon said shares of stock, and the proceeds of any sale that he may make of same, to be hers or theirs, as the case may be, absolutely," is not a limitation or lessening of the fee-simple estate first bequeathed, but is " alternative or substitutionary and is to have effect only in the event of the first devisee dying before the death of the testator." *Crumley* v. *Scales,* supra. It follows that the bequest in item 5 confers on Mrs. Peeples, who survived the testator, the title in fee to the stock of the Etowah Development Company, and that she is entitled to it without a sale by the trustee, if she so elects, she being of legal age and laboring under no legal disability.

2. The next question to be considered is, whether the trust created by item 5 of the testator's will is executed or executory. This question was first raised by the demurrer to the petition, which demurrer was overruled by the court. It is insisted by the plaintiff in error that item 5 created a valid continuing trust for Mrs.

Peeples, on the ground of wasteful and spendthrift habits of Mrs. Peeples. In other words, that it created "a spendthrift trust" for her. But the petition alleges to the contrary. On this point it is alleged that at the time testator made his will Mrs. Peeples was over twenty-one years of age and of sound mind, and has since that time remained of sound mind, and is fully capable of receiving, owning, controlling, and enjoying property in her own right without the intervention of a trustee, and was not then, and is not now, of the class of persons specified in section 3729 of the Civil Code of 1910, for whom trust estates may be created in this State; and therefore the plaintiff insists that the bequest of one half of the shares of stock in the Etowah Development Company to Robert S. Munford, in trust for plaintiff, is not a valid continuing trust, but became an executed trust for the benefit of the plaintiff alone, and that she is now entitled to have the perfect legal title to the bequest vested in her, free from the attempted trust. These allegations, so far as well pleaded, must be taken as true on demurrer, and we are of the opinion that the court did not err in overruling the demurrer for any reason assigned. And on the trial of the merits of the injunction feature of the case, the court did not err in granting the injunction.

Under item 5 of the will, in case of the sale of the mining stock by the trustee, the proceeds of the sale are to be turned over to Mrs. Peeples absolutely and in her own right; and if the testator thought his daughter capable of managing the income from and proceeds of the sale of the stock, as he evidently did, it is difficult to see why she should not have the capacity to vote her own stock in electing directors who can secure competent persons to conduct the operations of the Etowah Development Co., and otherwise to protect her own interests in connection with the stock. The question resolves itself into this: can a trust estate be created in this State for the benefit of a person who is sui juris? In such a case, says Turner, J., delivering the opinion of the court in *Thompson* v. *Sanders*, 118 *Ga.* 928, 930 (45 S. E. 715), "the statute of uses immediately transfers the legal estate to the usee, and no trust is created, although express words of trust are used. So absolute is the statute that it will operate upon all conveyances attempting to set up such a trust, although it be the plain intention of the settler that the estate should vest and remain in the trustee

named; for the intention of the citizen can not control express enactments of the legislature or positive rules of property." It was stated and held in the above case: "Where a testator by his will devised certain land to W. S., in trust for his wife, M. A., and her children, during his life, and at his death to be their property, and this property not to be sold for debts contracted by him, 'to have and to hold the same in trust for his wife and children,' the trust was immediately executed as to the wife, she being of age, and as to the children as they respectively came of age." And see *Gray* v. *Obear,* 54 *Ga.* 231, 235; *Banks* v. *Sloat,* 69 *Ga.* 330; *Kile* v. *Fleming,* 78 *Ga.* 1; *Harrold* v. *Westbrook,* 78 *Ga.* 5 (2 S. E. 695); *Parrott* v. *Dyer,* 105 *Ga.* 93 (31 S. E. 417); *Brantley* v. *Porter,* 111 *Ga.* 886 (36 S. E. 170); *Fleming* v. *Hughes,* 99 *Ga.* 444 (27 S. E. 791), and cases cited: *Wright* v. *Hill,* 140 *Ga.* 567 (79 S. E. 546); *Armour Fertilizer Works* v. *Lacy,* 146 *Ga.* 196 (2) (91 S. E. 12); *Lester* v. *Stephens,* 113 *Ga.* 495, 499 (39 S. E. 109). And see cases in which *realty,* or realty and *personalty,* was devised and bequeathed: *Bowman* v. *Long,* 26 *Ga.* 142, 147; *De Vaughn* v. *Hays,* 140 *Ga.* 208 (78 S. E. 844). The Civil Code of 1910, § 3729, provides as follows: "Trust estates may be created for the benefit of any minor, or person non compos mentis. Any person competent by law to execute a will or deed may, by such instrument duly executed, create a trust for any male person of age, whenever in fact such person is, on account of mental weakness, intemperate habits, wasteful and profligate habits, unfit to be entrusted with the right and management of property: Provided, the requisitions of the law in all other respects are complied with; And provided further, if when so created by deed, the same shall be recorded where the cestui que trust resides, within three months from its execution, and if not so recorded the same shall be null and void; Provided also, if at any time the grounds of such trust shall cease, then the beneficiary shall be possessed legally and fully of the same estate as was held in trust, and any person interested may file any proper proceeding in the superior court, where the trustee resides, to have the trust annulled on that ground, if he so desires. Any person having claims against the beneficiary may avail himself of the provisions of the Code in relation to condemning trust property at common law." Even if

the trust created can be construed as a "spendthrift trust," the plaintiff is seeking in the manner provided in the foregoing section of the Code to have the trust declared void for the reasons stated in the petition, viz., that she is over twenty-one years of age and fully capable of managing her own property. We think she has met this requirement. See *DeVaughn* v. *Hays,* supra.

In the instant case the provisions of the will do not expressly create a "spendthrift trust," but on the contrary the testator's direction in item 5, that the trustee might sell the mining stock and turn over to the cestui que trust the proceeds of the sale *absolutely,* indicates to the contrary. Other provisions of the will also give the daughter valuable property *absolutely,* which negatives the idea of the testator creating a "spendthrift trust" for his daughter. And still other provisions of the will than in item 5 created Mrs. Peeples a trustee for herself and children, of valuable property devised. In addition to the foregoing the testator, in item 8 of his will, provided that after payment of all of his just debts and expenses of executing his will and administering his estate, and after satisfying the "foregoing legacies," his estate "be divided as nearly as practicable into two equal shares, including therein all property both real and personal, including jewelry and silverware, accounts, notes, stocks, bonds, choses in action of every character, and property of every description, whether tangible or intangible, except money, in kind, and that the money of my estate, including that arising from my life insurance, be then apportioned to each of my said two shares of property in kind, in such proportion as to equalize the two shares in valuation; and I give, devise, and bequeath one of said equal shares to my son, Robert S. Munford, absolutely, and I give, devise, and bequeath the other of said equal shares to my daughter, Lewis Munford Peeples, absolutely." And then the testator provides, in case of disagreement as to the valuation of the property left by the residuary clause of his will, as to how the disagreement shall be settled. It seems evident, therefore, from this and other items of the will to which reference has been made, that the testator was of the opinion that his daughter had the capacity to manage property which was bequeathed to her absolutely.

In the Illinois case of O'Hare *v.* Johnson, 273 Ill. 458 (113

N. E. 127), the court having under consideration a will for construction, and whether it created a spendthrift trust, said: " He [testator] would hardly have appointed his son one of the executors if he had considered him a person not to be trusted with business matters." And it seems to us that the testator in the instant case would not have appointed his daughter as trustee for herself and her children, of valuable property, as he did in item 6 of the will, if he had considered her a spendthrift and incapable of managing her own business affairs, or the interests of her children. We know of no *presumption* in such circumstances in favor of a spendthrift trust; and if testator *had* so intended, it would have been an easy matter for him to have said so. But he has failed to say so expressly. It may be that he created the trust for an entirely different reason, but that is left entirely to conjecture. Whatever the reason for creating this trust, if it is done contrary to law, and made for one sui juris, and contrary to public policy, the intention of the settler must yield to the rule of law which prohibits the creation of trusts for one sui juris. However, this general statement must be understood with the qualification that " if there be limitations over and restrictions in favor of other persons for whose use a trust is capable of being created, the trust estate would be upheld." *Sargent* v. *Burdett*, 96 *Ga.* 111, 117 (22 S. E. 667). In the present case we are of the opinion that there is no life-estate created with limitation over.

The power was given the trustee in item 5 of the will to sell the stock of the Etowah Development Company, " as in his judgment may be best for the interests of all parties concerned." It is insisted that this gave the trustee the power to *refuse* to sell it; and further that it conferred on him a personal right, in that he owned most of the other stock, and therefore he could exercise a discretion in using the power which would be for his personal advantage. It is also insisted, on the other hand, that the only reasonable construction of this item of the will is that the trustee should make the sale within a *reasonable time,* and turn over the proceeds to the cestui que trust, Mrs. Peeples, as the sole beneficiary, provided she should not die before the sale occurred. We think the latter view the better one. Otherwise the trustee could arbitrarily prolong the trust in his own interest as against

the interest of the cestui que trust. The rule has been stated that "Where the creator of a trust makes its duration discre-tionary with the trustee, still such discretion is not arbitrary, but must be exercised reasonably and in the interest of the cestui que trust." 39 Cyc. 95, note 47; Avery v. Avery, 90 Ky. 613 (14 S. W. 593); Cushman v. Cushman, 102 App. Div. 377 (92 N. Y. Supp. 833); In re Walkerly, 108 Cal. 627 (41 Pac. 772, 49 Am. St. R. 131); In re Cooper's Estate, 150 Pa. 576 (24 Atl. 1057, 30 Am. St. R. 829, 831). But it is further insisted by the plaintiff in error that the trust created in item 5 was created in order to protect *his* contingent remainder; that the legal title to the stock was put in him, with the discretion to sell the Etowah Mining stock "as in his judgment may be best for the interests of all parties concerned," and thus to prevent Mrs. Peeples from dis-posing of it during her lifetime and defeating the contingent re-mainder in case of the sale or disposition of the stock before the death of the plaintiff. The reply to this contention is that the trust is created *expressly* for the *plaintiff*. No one else is named as cestui que trust in the will; and this fact throws much light on the question as to whether one of the purposes of the trust was the protection of the contingent remainder of Robert S. Munford. And even if the trust should be construed as one created for Mrs. Peeples as life-tenant, it could not by reason of that fact alone be also construed to mean that it was created to protect the contingent-remainder estate, unless the testator's intention in this respect is clearly expressed, or necessarily im-plied from the language of the will; and we think no such language is contained in the will. And this being so, we think that in the circumstances of the case the trust for Mrs. Peeples, the owner of the estate preceding the contingent-remainder es-tate, will be considered as executed from the death of the testator, and that Mrs. Peeples is entitled to the possession of, and title to, the property free from any trust whatever. Compare *Smith* v. *Frost,* 144 *Ga.* 115 (86 S. E. 235); *Tillman* v. *Banks,* 116 *Ga.* 250, 252 (42 S. E. 517); *Glover* v. *Stamps,* 73 *Ga.* 209 (54 Am. R. 870); *Overstreet* v. *Sullivan,* 113 *Ga.* 891 (39 S. E. 431); *Brantley* v. *Porter, Fleming* v. *Hughes, Kile* v. *Fleming,* and *Harrold* v. *Westbrook,* supra. In the *Fleming* case, Simmons, C. J., speaking for the court said: "As shown by the decisions of

this court first above mentioned, and the authorities cited therein, our married woman's act of 1866 terminates a trust far quicker than the statute of uses. Under the latter statute, a trust for a woman, married or single, became executed only by the death of herself or her husband in her lifetime; while under our act first mentioned, the trust, if created before, terminates at the date of the act, if the cestui que trust was then twenty-one years of age, and if afterwards, upon like condition, it became a legal estate instanter, from the date of the deed, or the death of the testate, whether the estate be solely for the beneficiary, or there is a limitation over in trust, or not. Therefore, the cases of *Askew* v. *Patterson*, 53 *Ga.* 209, *Ford* v. *Cook*, 73 *Ga.* 215, *Knorr* v. *Raymond*, 73 *Ga.* 764; *Cushman* v. *Coleman*, 92 *Ga.* 772, 774, 775, and other cases like them, where trusts were expressly created for both the life-tenants and remaindermen, and the life-tenants died before our married woman's act, as well as such cases of trust as have been determined otherwise than as above after said act, without its effect being made a question for this court to decide, are clearly distinguishable from, and have no application whatever to the case at bar. Moreover, under the old law in England, and possibly in this State before the Code, a trust to preserve a contingent remainder, which was only necessary because such a remainder was then liable to be defeated by the premature termination of the life-estate by forfeiture or otherwise, was usually by granting or devising the remainder after the life-estate, and during the life of the life-tenant, to a trustee for that express purpose, with a legal remainder over to the contingent beneficiaries after the death of the life-tenant. Tiedeman on Real Property, 424; 2 Washburn on Real Property, 509; 4 Kent's Com. 256; 2 Blackstone, 171, 172; Fearne on Contingent Remainders, m. p. 326; 2 Leading Cases in American Law of Real Property, p. 367; Note 17 Am. St. Rep. 839. Or, by making the grant or devise direct to a trustee for the life-tenants, with the legal remainder over. Moody v. Walters, 16 Vesey, 294."

In the instant case the trust is expressly declared to be for Mrs. Peeples, and no trust is expressly declared, or arises by necessary implication, in favor of the contingent remainderman, Munford; and this being so, it follows that no trust can be declared created for the contingent remainderman. See, in this connection, *Over-*

*street* v. *Sullivan,* supra. If it was the purpose of the testator in creating the trust to preserve the *contingent remainder* for the plaintiff in error, he would doubtless not have directed the trustee, if he deemed it best for the interests of all parties concerned, to sell the mining stock and turn the proceeds over to Mrs. Peeples *absolutely.* If the purpose was to protect the contingent remainder in the event of sale, the testator would, in all probability, have had the trust attach to the proceeds of the sale of the stock, and would have empowered the trustee to retain the proceeds of the sale during the life of the first taker (Mrs. Peeples) and pay her the interest thereon during her life, with remainder over. But this was not done, but instead a trustee was appointed with power to sell the stock, the trustee, according to the evidence, being a mining expert, who could sell to better advantage than his sister, who was not, and then turn over the proceeds of the sale to her absolutely. In the view we take of this case, we think there was no intention of the testator, as gathered from the whole will, to create a trustee for the contingent remainderman. We are of the opinion that the court did not err in any of the rulings, nor in granting the order complained of, including the temporary injunction.          *Judgment affirmed. All the Justices concur.*